## HARRIET N. BILLINGS *vs.* CITY OF WORCESTER.

In an action on the Gen. Sts. *c.* 44, § 22, against a city for an injury sustained by a traveller by slipping and falling on ice, while walking with due care on the sidewalk in a street which the defendants were bound to keep in repair, they have good ground of exception, if at the trial the judge submits the case to the jury under instructions which authorize them to return a verdict for the plaintiff if they shall find that the ice was produced upon the sidewalk by reason of some defect in a structure near the street and affecting that particular portion of the sidewalk only, even though they shall also find that the ice was not a defect by reason of anything in its form or character besides what is inseparable from ice. COLT and AMES, JJ., dissenting.

Within the meaning of the Gen. Sts. *c.* 44, § 22, notice to a town or city, which is bound to keep a way in repair, of a cause outside of the way, which may produce a defect in the way, is no notice of the defect itself, if produced: nor is the existence of such a cause, for the twenty-four hours previous to the occurrence of an injury suffered through the defect, equivalent to the existence of the defect itself for that time.

TORT on the Gen. Sts. *c.* 44, § 22, for an injury alleged to have been caused to the plaintiff by a defect in a street which the defendants were bound to keep in repair.

At the trial, before *Ames*, J., the plaintiff testified that, about ten minutes before six o'clock on the evening of December 25, 1868, at which time it was " not very dark," she was travelling, on foot, upon the sidewalk on the west side of Main Street in Worcester, walking about four feet distant from the buildings abutting on the sidewalk, which was twenty feet wide, when, as she was passing the doorway of a building called Eaton Block, she slipped upon ice, fell, slid about two feet from the place she first struck in falling, and was much injured ; that, when she fell, her hand struck within a foot of the doorstep ; and that she rose, and tried to reach the doorway to obtain assistance, but " could not, because it was slippery and she thought it was steep." It was admitted that she was using due care at the time of the accident, and she introduced evidence tending to show " that before and at that time ice had formed underneath and about the end of a conductor running from the eaves down the front wall of the building ; that the cause of the formation of the ice was the stopping up of the conductor by freezing, so that the water ran over and down by the outside of the conductor ; that before and at the time of the accident ice had formed in front

of the door by water dripping from the eaves; and that the side-walk at the place of the accident sloped considerably from the building towards the middle of the street." Several of the plaintiff's witnesses described the ice, "as it existed before and at the time of the accident, as a ridge or accumulation, extending from under the said conductor nearly across the sidewalk, and of the thickness of three or four inches or more directly under the conductor, and sloping towards the centre of the street, and as being from two to three feet wide in the widest place, presenting a rounded and glare surface;" and further testified that "on each side of the ridge the sidewalk was free from ice." One of the witnesses "testified that on the day of the accident there was ice in front of the door and close to it, rough and ridgy, and that the ice extended out upon the sidewalk; but he did not describe its thickness." Another witness testified "that, at the time, the ice in front of the door was one inch thick at a point about four feet from the door, and sloped gradually nearly across the sidewalk; that it was smooth and glare, with the exception of small ridges near the door, formed by the water flowing over and freezing." It was proved that "the streets and sidewalks generally, on the night of the accident, were in good condition and free from ice or snow."

The defendants put in evidence the record of the laying out of the street, by which it appeared that the front wall of Eaton Block was built on a line eight and a half inches outside of the boundary of the street; and they introduced evidence tending to show "that the conductor was two feet or more south of the door, and was outside of the location of the street; that the ice about the conductor was much thinner than, and did not extend as far out towards the middle of the street as, the plaintiff's witnesses described it; that it was quite thin at a little distance from the conductor; that the surface was smooth, and it sloped towards the middle of the street; and that it formed mostly south of the conductor." It was proved that the sidewalk was almost new, and was properly constructed, unless its slope was too great; and from the evidence it did not appear precisely how much it sloped.

The jury viewed the premises; and the defendants contended and argued, " from the evidence and the observations of the jury themselves, that the ridge of ice, described by the plaintiff's witnesses as three feet wide and extending from the conductor across the sidewalk, could not have reached to the place where the evidence of the plaintiff showed that she fell, but must have been further south," and they requested the judge to instruct the jury " that the city was not liable for the construction of the conductor, because it was outside of the location of the street, and the condition of the building, whatever it was, was no evidence of notice of a defect in the street, although that condition was the cause that produced the defect; that if the city had notice of a cause outside the location of the street, which was likely to produce a defect in the street, that was no notice of the defect itself; and that the city must have had reasonable notice of the defect itself, or it must have existed twenty-four hours, and it was not material that the defendants had notice of a cause likely to produce the defect, whatever the cause might be."

" The judge did not give these instructions in terms, but instructed the jury upon these points substantially as follows : If any defect or want of repair in the conductor or the eaves of the building caused the water, by alternate thawing and freezing, to drip upon the sidewalk and form ice there, so as to make a portion of the sidewalk unsafe, and it had continued so for more than twenty-fours, it would be a defect for which the defendants might become responsible. If, from the operation of general causes, as by reason of atmospheric changes, snow falls and melts and then freezes, or rain falls and freezes, covering all the land with a coating of ice, that is not a defect for which a town or city is liable. But if ice is formed by some local cause, as by a defect in some spout or sewer, or if water drips down from the edge of a roof, or flows from a defectively constructed building, by the side of the street, and forms ice upon some spot in the sidewalk, so that a person walking and coming unexpectedly upon a smooth piece of ice so formed would be exposed to the danger of slipping and falling, it might be a defect for

which the city would be liable. In other words, ice may be a defect, even though not broken up into unevenness. It depends upon whether the result is produced by general causes affecting a whole town or neighborhood alike, or by some defect, malconstruction or want of repair in the street, or some building or structure near to or by the side of it, and affecting some particular portion of the sidewalk and rendering it unsafe." The jury found for the plaintiff, with damages in the sum of $1080; and the defendants alleged exceptions.

*W. W. Rice & F. P. Goulding,* for the defendants.

*G. F. Verry,* for the plaintiff.

WELLS, J. The question, raised upon the instructions excepted to, is substantially this: Whether the same condition of a street or sidewalk, which, if produced " from the operation of general causes, as by reason of atmospheric changes," resulting in a slippery state of the surface, would not be a defect, may be shown by proof and found by a jury to be in fact a defect for which the city or town is liable, " if the ice is formed by some local cause" such as those enumerated by the judge at the trial. The jury were instructed that smooth ice, " not broken up into unevenness," may be a defect; and that the question of defect or no defect, in such case, would depend upon the manner in which the result, or condition of the street, was produced, whether by general causes affecting a whole town or neighborhood alike, or by some special local cause.

There are expressions, in some of the decisions upon this subject, which seem to give color to this distinction. But a majority of the court are satisfied that it is a distinction which will not bear the test of close scrutiny. The liability of towns for defects in highways is a special and peculiar one. It is not based upon the rules of reasonable care upon which individual liability usually depends. Except so far as it is modified, in relation to defects that have not existed twenty-four hours, by the condition that there must have been reasonable notice of the defect, the liability of the town is not at all affected by the question of its diligence or negligence. The existence of the defect, and the lapse of twenty-four hours, or a less time with reason-

able notice of the defect, complete the conditions of liability. It is of no consequence whether that which constitutes the defect arose from causes for which the town is responsible, and over which it had control, or from natural and general causes, such as storms, floods, hurricanes, accident, or gradual and imperceptible change and decay.   The fault for which the town is chargeable consists in permitting the defect to remain, not in causing it to exist.   It is not enough, for the exemption of the town, that it has exercised reasonable care, or even the utmost diligence to make its ways safe, if they are in fact not so.   The statute is peremptory.   It contains no qualification except that as to the time of the continuance of the defect.   It permits no excuse, not even " the act of God or the public enemy."   Obstructions from snow and ice, and, indeed, in the open country, most defects in the highways, are produced by causes which are natural and of general operation.   When an injury is suffered, a town is not allowed to exonerate itself from responsibility by showing that the defect which occasioned it arose from such causes, beyond its control and without any negligence on the part of its officers.   On the other hand, if the injury happened by reason of that which was not in itself a defect, the town cannot be made liable, whatever may be the proof as to the manner in which the condition of the way became such as it was.

The ground upon which it has been held that the mere fact that the surface of a well constructed street or sidewalk is rendered smooth and slippery by moisture and frost does not constitute a defect is, that such a condition is so inevitable, so necessarily an incident to the character of our climate, so dependent upon the changes of temperature from day to day and from hour to hour, that it cannot be supposed to have been the intention of the legislature to cast upon the towns a duty so impossible of performance, or a burden from which the highest degree of diligence could do so little to protect them.   *Stanton* v. *Springfield*, 12 Allen, 566.   *Luther* v. *Worcester*, 97 Mass. 268.   The application of those decisions must not be limited by the reasons which led to the conclusion.   Particular instances are not to be excepted from such a rule of law because all the reasons suggested for its adoption do not exist in those instances.

The case of *Nason* v. *Boston*, 14 Allen, 508, is strongly in point. There a special local cause was relied on as contributing to the condition of the sidewalk, which was alleged to be unsafe. That special cause was within the limits of the street, and in a measure under the control of the city. It affected that particular portion of the sidewalk only. The judge at the trial made substantially the same distinction as was made by the instructions in the present case. But it was held that the responsibility of the city must be determined solely in reference to the condition of the sidewalk, upon which the defect was alleged to have been, which caused the injury. Neither the special cause nor the limited effect was regarded as changing the principle to be applied. Indeed, that which produced the slipperiness in both cases, frost, is neither special as a cause, nor is its operation local or limited, but general.

In the case of *Hall* v. *Lowell*, 10 Cush. 260, there was evidence of an accumulation of ice, the character and thickness of which was in dispute; and the case having been submitted to the jury " upon instructions satisfactory to both parties," the only question was upon the sufficiency of the evidence to sustain the verdict.

In *Shea* v. *Lowell*, 8 Allen, 136, the question to which the exceptions related was not whether the ice was of such a character as to constitute a defect, but whether the defendant had used sufficient care and diligence to remove the ice, or to protect the public from it. As that was one of the grounds of defence relied on, and set up in the answer, the city could not well object to testimony offered to meet it.

*Payne* v. *Lowell*, 10 Allen, 147, differs from *Shea* v. *Lowell* only in that the question arose upon the competency of certain evidence offered by the defendants to sustain the defence of reasonable diligence. The court remark that " the evidence excluded had no bearing upon the question whether there was a defect in the way."

The result of all the decisions is, that the question of defect must be determined by the condition of the way itself in respect to that particular which is alleged to have caused the injury

complained of; that the question of notice to the town, and of fault or negligence, or the contrary, on the part of the town, are involved only in reference to that particular defect or condition complained of, and, even as to that, only to a very limited degree; that snow and ice in the streets, or upon sidewalks, are not defects merely because they make it slippery.

As the jury were authorized by the instructions to find that ice, not otherwise a defect by reason of anything in its form or character besides that which is inseparable from ice, was a defect in this case, if they also found that it was produced or deposited upon the sidewalk by reason of some malconstruction or want of repair in a building or structure by the side of or near to the street, and affecting that particular portion of the sidewalk only, a majority of the court are of opinion that the verdict must be set aside. The incorrectness of the instructions cannot be helped by any supposition that the jury, by means of their view or upon any evidence in the case, may have found that there was in fact a defect of a character different from that which the instructions apply to.

The instructions asked for, to the effect that notice of a cause outside, which was likely to produce a defect in the street, is no notice of the defect itself; and that the existence of such a cause for twenty-four hours is not equivalent to the existence of the defect for twenty-four hours, state a correct rule of law; but the instructions given to the jury required them to find that the defective condition which caused the injury had continued so for more than twenty-four hours.

COLT, J. The jury were told in this case, substantially, that, if from local causes a particular portion of the sidewalk was rendered unsafe by the formation there of smooth ice, and it had continued so for more than twenty-four hours, it might be a defect for which a city or town would be liable; that such defect might arise from malconstruction, or want of repair in the street, or in some structure by the side of the street, affecting some particular portion of the walk, and rendering it unsafe Instructions appropriate to other parts of the case were given

which were not objected to and are not reported. The action was for an injury occasioned by a defect in the highway, and the jury, under these instructions, must have found that the plaintiff, while in the exercise of due care on her part, was injured solely by such defect. They have declared that smooth ice, under the conditions disclosed here, is a defect in the highway. And the case is brought, in my opinion, within all the statutory conditions fixing the liability of cities and towns in these cases.

Whenever an injury is occasioned to the traveller solely by the condition of the highway, either in respect to its construction, or want of repair, or obstructions suffered to remain upon its surface, the question whether such condition amounts to a defect is ordinarily for the jury alone. It is, under the statutes, a practical question, even more appropriate for the jury than the question of due care. The statutes do not define what shall be a defect. The standard established is, that highways shall be safe and convenient. The rule given is, from the necessity of the case, flexible, and without uniformity in its practical application. It is different in different localities and under different circumstances. It is affected by the amount and nature of the travel to be accommodated, by the character of the country through which the road passes, and the expense and difficulty of constructing and maintaining it. It is one thing in the city and another in the country. It is less stringent in winter and spring, when travel is obstructed by snow and frost and mud, than in summer, when all roads are hard and dry. As a practical question to be settled by the jury, the liability of the town or city will always be affected by the diligence exercised by it, or the negligence with which it is chargeable. It was not the intention of the statute to impose a liability for that which it is impossible to prevent or remedy. It is indeed peremptory; and the town is liable, if a defect has actually existed for the required time, even though produced by causes against which human foresight could not guard. But, in such cases, permitting the defect to remain more than twenty-four hours, or not seasonably warning the traveller, so that he may avoid the dan

ger, is a dereliction of duty which makes the town liable. In most cases, upon the question what is a safe and convenient highway, the jury will be influenced by the knowledge of what it is reasonably practicable to do to adapt a road to existing con-ditions and existing demands of travel. In view of these con-siderations, it is manifest also that the degree of care which is required of the traveller varies with the varying standard of what is safe and convenient. He must regard the circumstances sug-gested, and regulate his care by what he has a right to. expect as to the condition of the road. To a man thus cautious the way may be safe, though in fact dangerous as compared with other roads, or with the same road at another season of the year or under more favorable conditions of the weather. If, for instance, the whole surface of the walk becomes, by the changes in our climate, covered with slippery ice, the highway would be made unsafe to a person passing incautiously over it, yet, if well con-structed and in good repair, there would be no defect within the meaning of the statute ; while a spot of ice, presenting only a smooth and glare surface, if suffered to gather and remain upon a sidewalk, might be justly considered as creating a defect which makes it at that point unsafe and inconvenient, within the mean-ing of the statute. In one case, the traveller is put upon his guard ; and in the other, not. In one, it is impossible to pre-vent or remedy the unsafe condition ; and in the other, the dan-ger may be prevented or removed, or due notice of its existence given. The questions, what is due care, and what is a defect, in a given case, must be considered with reference to and as re-ciprocally affecting each other. If the plaintiff produces any evidence upon the two propositions upon which his case de-pends, he has the right to submit them to the jury. It is not possible to define either as matter of law, without introducing uncertainty and confusion.

In the case at bar, I do not understand the instructions to have made the safety of the way depend upon the producing cause. All the instructions must be taken together and applied to the facts. The jury were distinctly told that the cause must affect the particular portion of the sidewalk, and render it un-

safe, as distinguished from those influences of the climate which affect the whole surface of the country. The condition of the way in question consisted of a deposit of ice on the walk, more or less permanent, and entirely local in its character. Simple expedients, easily applied, it seems, would have prevented or removed it. It is not material whether it was caused by defective drainage within the limits of the street, the want of a proper culvert, as in *Stone* v. *Hubbardston*, 100 Mass. 49, or by neglect to use means adapted to prevent the flow of water from adjoining premises. The jury themselves visited and viewed the locality, and, upon all the evidence, they may have considered it practically as unsafe and inconvenient as if an excavation had been left open, or a tree had fallen across it. The street and sidewalks generally, on the night in question, were free from ice and snow; and the plaintiff came unexpectedly upon it, using due care.

I cannot but think, that, upon sound principles of law applicable to this statute liability of towns, the verdict in this case ought not to be set aside. In doing it, the court must go a step beyond the line established by any former decision.

In *Stanton* v. *Springfield*, 12 Allen, 566, slippery ice was produced by sudden changes of the weather, affecting the whole region, upon a sidewalk otherwise well constructed. And the court say that " it could never have been intended by the legislature to impose upon the towns and cities of the Commonwealth a responsibility so extensive, or that the phrase ' safe and convenient for travellers ' should receive such an interpretation. It would require of all the towns an examination of all their roads so incessant and minute, and the application of an efficient remedy would be so laborious and expensive, that it would be manifestly unreasonable to require or expect it. The freezing mist of a single night may glaze over the whole territory of a town. The formation of thin but slippery ice in our climate is an effect which may be so suddenly and extensively produced, and which may continue or be renewed for such a length of time, that it would be extremely difficult, if not impossible, for towns to make adequate provision against it."

The plain meaning of this language is, that the towns and cities of the Commonwealth are° not called upon to perform impossibilities. They are not required to resist and counteract the general effects of the climate, and the sudden changes of weather and alternations of temperature which affect the whole territory and surface of a town or a county alike, and which no human diligence could be expected to prevent or to remedy. It is clear that the learned judge who delivered the opinion in that case intended to exclude those cases where the alleged defect is one which it was reasonably practicable to prevent or remedy ; for he further says that " there is no question that a way may be defective or out of repair, within the meaning of the statute, by reason of ice or snow upon it." It may be " so exposed to the formation of ice as to make passing over it in winter especially dangerous." The decision in that case, as in all others, is properly limited by the facts to which it was applied, and cannot be wisely extended to this case.

*Hutchins* v. *Boston,* 12 Allen, 571 note, and 97 Mass. 272 note, and *Johnson* v. *Lowell,* 12 Allen, 572 note, were held to fall within the principle of *Stanton* v. *Springfield,* and involved the same question.

The case of *Nason* v. *Boston,* 14 Allen, 508, contained some additional elements, but in the opinion of the court it was brought within the scope of *Stanton* v. *Springfield.* It appeared that snow was loosened and thrown up by the wheels of the horse cars passing in the street, and then carried upon the sidewalk by adhering to the feet of those who crossed the street, and was there trodden down ; and that ice was formed in that manner upon the sidewalk. This was held not to be a defect for which the city could be held accountable. There was nothing in this case to show that there was any unevenness, or anything like a ridge or mass of ice. There was also nothing to show that ice was formed at that particular spot by anything except the ordinary stress of weather and the ordinary incidents of travel, or that the state of facts at that place differed in any essential particular from other street crossings in general. That snow in winter time should adhere to the feet of passengers crossing

the streets, and should be shaken off when they reach the side-walk, and there be trodden down compactly, may be considered as one of the ordinary incidents of the use of the streets. Such would probably be the state of things, with no difference except in degree, at that season of the year, at all the street corners, in all the cities of the Commonwealth. That case, therefore, was not one in which it could be said that there was a special or peculiar cause for the formation of ice at the place of the accident, as compared with street corners generally. The opinion of the court in that case is carefully guarded. It is there said, that " the liability of the city must rest upon some ground of fault or neglect on the part of its officers who are charged with the care of the streets. Such fault or neglect is no more involved in the carrying of snow upon the sidewalk by the feet of travellers than in its fall there from the clouds." " This condition, so inevitable an incident of our climate, does not of itself render the city liable, without some other element or evidence of fault or neglect." In these well chosen words a sound proposition is stated, which is also recognized and approved in *Luther* v. *Worcester,* 97 Mass. 268.

The judgment in the case of *Nason* v. *Boston,* in my opinion, must be considered as marking the extreme limit to which the court should go in that direction. It does not reach the present case. Both cases cited turn upon the distinction between effects produced by causes operating suddenly and extensively, and which may continue or be renewed for such length of time that the highest diligence cannot prevent or remedy them, and those preventable defects which result from special and local causes, and against which it is practicable for towns to make adequate provision.

It is not necessary further to point out the additional evidence and elements of neglect, which appear in the present case and distinguish it from each of the others.

I regret that I feel compelled to disagree with a majority of my associates, in the judgment to which they come. I am authorized by Mr. Justice AMES to say that he joins in the dissent,

*Exceptions sustained.*