### SARAH HUGHES *vs.* CITY OF LAWRENCE.

Essex.    November 8, 1893. — February 27, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Defective Sidewalk — Notice.*

In an action against a city for injuries to a traveller resulting from slipping and falling on an icy sidewalk, there was evidence tending to show that where the plaintiff fell a gutter about fourteen inches wide and about one and a half inches deep led from a building across the sidewalk to the street; that water dripped from a conductor on the building into the gutter, and that ice to the height of a foot or more had accumulated at the bottom of the conductor and extended out into the gutter about half way across the sidewalk, losing in thickness as it receded from the conductor, and also extended easterly in a smooth and even sheet about one eighth of an inch in thickness and about three feet in width, along the sidewalk by the side of a grating to a window in an adjoining building. There was evidence that the plaintiff fell on the smooth thin ice farthest from the gutter, but she testified that she fell as she stepped into the stone gutter. *Held*, that if the plaintiff fell on the thin ice near the window she was not entitled to recover, but that if she fell in the gutter there was testimony on which it was competent for the jury to find that the way was unsafe for public travel and defective.

A notice to a city stated that on a day named the plaintiff fell on the sidewalk at a place " about two feet east of the stone drain " that crossed the sidewalk, and stated further that the cause of the injury " was an accumulation of ice due in part to a water conductor which was broken, and discharged water upon the sidewalk, and in part to said stone drain, which confined the water in such a way that it formed a defect in the sidewalk, and caused an accumulation of ice thereon." At the trial, there was evidence that the plaintiff fell as she stepped into the gutter.    It was conceded by the defendant that the plaintiff, by the form of the notice, had no intention to mislead.    *Held*, that it could not be said, as matter of law, that the notice was defective in describing the place where the plaintiff fell.

TORT, for personal injuries occasioned to the plaintiff by a defect in the sidewalk of a street which the defendant was

bound to keep in repair. At the trial in the Superior Court, before *Bond*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which, so far as material, were as follows.

The plaintiff was injured by falling upon the sidewalk on Essex Street in Lawrence at about half past eight or nine o'clock in the evening of January 8, 1893. At the place where she fell the sidewalk was constructed of brick with an edgestone, and from the curb to the buildings it was fifteen feet wide, but, as the line of the street was three feet from the building, only twelve feet of the sidewalk was within the limits of the way. A stone gutter, fourteen inches wide and about one and a half inches deep, ran across the sidewalk from the building to the street. On the side of the adjacent building, extending from the roof through the sidewalk to the sewer below, was a water conductor, which had formerly discharged into the stone gutter. For about five feet above the surface of the ground the conductor was of cast iron, and above that of galvanized iron. The rust had eaten away the galvanized iron pipe where it entered the cast iron pipe, and there were a number of holes in the former, such as would be made by an ice pick when used in cutting off ice. In the sidewalk next to the building, immediately east of the stone gutter, was an iron grating about six feet long and three feet wide.

There was evidence on which it would have been competent for the jury to find that at about noon on January 8 the lower part of the conductor was frozen up; that the snow on the roof was melting slightly, and that in consequence water spurted out of the holes in the conductor and struck upon the sidewalk south of the grating, and, freezing there, formed a coating of ice about one eighth of an inch thick, extending from the stone gutter a little over six feet easterly by the side of the grating to a point opposite a window in the adjacent building, and three feet or more wide at its east end and a little narrower where it touched the stone gutter, and that this ice was perfectly smooth and even; and that the plaintiff slipped and fell upon the southeast corner of this thin ice, at a point the farthest from the gutter and the grating. There was no evidence that the sidewalk was defective in construction, unless the stone gutter was a defect.

The plaintiff contended that, since the conductor had ceased to discharge into the stone gutter, it should have been removed.

There was also evidence on which the jury might have found that ice had accumulated to the height of a foot or more at the bottom of the iron conductor, and extended out in the stone gutter about half way across the sidewalk, losing in thickness as it receded from the bottom of the conductor, and extended easterly about six feet by the side of the grating.

There was an accumulation of ice upon the conductor, and water had run down upon the outside and frozen in the stone drain.

A police officer, who was accustomed to pass the conductor daily, testified that at noon of January 8 he noticed the water spurting from it upon the sidewalk. On cross-examination he testified that the sidewalk for a number of days had been in the same condition as on the evening of the accident.

On January 31, 1893, the plaintiff gave written notice to the city, in which she stated that "the place where I fell was on the northerly sidewalk of Essex Street, at a place about half way in the width of the sidewalk and about two feet east of the stone drain that crosses said sidewalk between Cross's store, numbered 247, and Truell's store, numbered 249, on said street. The cause of said injury was an accumulation of ice due in part to a water conductor which was broken, and discharged water upon the sidewalk, and in part to said stone drain, which confined the water in such a way that it formed a defect in the sidewalk, and caused an accumulation of ice thereon."

The · plaintiff offered evidence tending to prove that she slipped and fell as she stepped on the stone gutter with the ice in it, or into the gutter, and the court directed the jury that' it was important for them to determine " whether she fell at the stone gutter ; that is, did she slip there? Did her feet slip at the stone gutter as she stepped on it or into it, or did she slip out near the window where the grating is ? "

It was conceded by the defendant that there was no intention to mislead by the notice given by the plaintiff; but on the question whether the defendant was in fact misled thereby a police officer of the defendant and one Curran, both of whom were called by the defendant, testified that they were about sixty feet

from the plaintiff when she fell, and that they picked her up at the southeast corner of the smooth ice, and assisted her to the police station for the purpose of securing medical attendance. The plaintiff testified that, in endeavoring to get to her feet, she moved somewhat from the place where she fell before the officer and Curran reached her. The city marshal examined the place that night, and on the next morning photographs of the sidewalk were taken, extending far enough east and west to show both of the places where it is contended that the plaintiff might have fallen, measurements were made by the city engineer, and an examination was made by an officer of the city whose duty it was to examine into accident cases.

There was no other evidence that before the trial the attention of the city or of its officers had ever been called to any ice in the gutter, or to the gutter itself as a defect, and the foregoing witnesses for the city testified that they had never heard or understood that the gutter, or the ice in it, caused the accident, or that the plaintiff fell at or in the gutter. It appeared that the officers of the city incidentally looked at the gutter, and all the witnesses testified as to their recollection of its condition.

The notice was given more than two weeks after the accident, and no examination of the place was made after service of the notice. It was admitted at the trial that the plaintiff was in the exercise of due care when injured.

The defendant asked the judge to rule : " That, upon all the evidence, the plaintiff is not entitled to recover. That the condition of the sidewalk, as disclosed by the undisputed evidence in this case, was not a defect or want of repair in the street. That ice or snow upon the sidewalk does not constitute a defect, unless its accumulation is caused by some defective construction of the sidewalk itself, or unless it has accumulated in ridges or hubbles of sufficient size to be dangerous to travellers passing upon the sidewalk and using due care. If the plaintiff gave to the city a notice which was intended to describe, and did describe, one place and cause for the accident, she cannot now rely upon a different place and cause for it. The plaintiff cannot recover if the accident was caused by her slipping upon the gutter, and not upon ice on the sidewalk to the east of it. The plaintiff cannot recover if she slipped upon the gutter itself."

The judge refused so to rule, and instructed the jury, in substance, that it was for them to determine where the plaintiff fell, and whether at that place the way was defective or out of repair. If she fell near the window grating, their attention should be directed simply to that place to determine whether at that spot it was out of repair, and although they might think that the stone gutter was defective, and that there was a want of repair in the street, the plaintiff was not to recover damages if she fell near where there was a defect, or at some distance from it, so long as she did not fall there ; that if there was a condition of mere slipperiness, extending over the entire sidewalk, caused by a fall of rain or the condition of the weather, the city would not be liable. It is not contended that the condition of the way was caused by any fall of rain which froze upon the sidewalk, so that it is not a case that sometimes arises by the mere slipperiness of the way. It is contended that, if the accident occurred at the basement window, the water formed and ran into the conductor down the side of the building ; that the conductor was in such a condition, perhaps because it was stopped up with ice at the sidewalk upon this same place near the surface of the sidewalk ; and that by reason of the holes in it the water came out, ran down upon the sidewalk outside of the line of the street, and from this place between the line of the street and the building out upon the sidewalk, and there formed a coating of ice. But if it occurred at the conductor, by reason of water running into the gutter, and flowing along so that, by reason of the accumulated water and the frost, it was in such a condition that it was slippery, and that was the condition which formed the defect, wherever the place was that the accident occurred, it was not a case of mere slipperiness from the fall of rain. Although the ice may have been a mere smooth coating on a portion of the sidewalk, yet they should take into consideration the manner in which it came upon the sidewalk, the construction of the sidewalk, and the condition of the conductor ; if the conductor was in such a condition that the water came out of it, and if the sidewalk was so sloped that as the water came out it would run across the part of the street set apart for people to walk upon, and, when a portion of the sidewalk would be free from ice or snow, yet this particular place would not be noticed by a travel-

ler in the evening, that would make a condition of the walk entirely different from a smooth coating of ice entirely across the sidewalk.

" And taking into account the necessities of buildings constructed in that way, the necessity of constructing sidewalks with reference to the buildings on the side of the way, taking into account all the circumstances that have been testified to here as to what had been done in reference to this place, whether, coming out in that way, as it did, making the way in the condition that you find it to be, you are to say, as a question of fact, whether that way was reasonably safe for people at that time. And if it was not, then it was defective, it was out of repair. If you say that it was reasonably safe, you go no farther with the case because the plaintiff fails at the very outset, — there was no defect."

The judge further instructed the jury on the question whether the city was misled by the notice given by the plaintiff as follows : " It is not contended that there was any intention on the part of the plaintiff to mislead the city, but it is contended that the city was misled by the notice which was given. You will have the notice with you, and you can examine it and see what it says with reference to this. It is not a question here whether the city was injured, whether it lost anything by the failure to give notice or not. That is not the provision of the statute which aids the defective notice. It is that the city was not misled by it. With reference to this, where were the officers of the city led to believe that this accident took place? At the stone gutter, or somewhere near it? If you should determine that it took place at the stone gutter, then you will say whether the notice misled them. If you say that it occurred near the window grate, then you will say whether that is not substantially the place that is described in the notice. In the latter case, it is not contended that the city was misled. Now, take all the evidence that there is, what the officers of the city knew about it, what information they had from the persons who saw it as to where this accident really occurred, then, after the notice was given and they came here for trial, whether they by reason of the notice that was given were led to believe that it was to be contended that the defect was in the gutter or in the neighborhood of it, —

when the plaintiff stepped in the gutter that she fell by reason of the defect therein, or whether she fell near the window by reason of the ice. I cannot say, as matter of law, whether they were misled or not. That is a question of fact for you, and if you should conclude that they were misled by this notice given in this way, then the plaintiff has failed upon the requirement of the law as to notice, and is not entitled to recover. If you say the city was not misled, then the plaintiff, having made out all the other parts of the case, is entitled to recover, although the notice may not have been made with that accuracy that we sometimes have. If she has not, . . . if she has failed on any of them, . . . then she is not entitled to recover, and your verdict should be for the defendant."

At the defendant's request, the court instructed the jury that the cause which produced the condition of the sidewalk, as disclosed by the evidence, was immaterial upon the question whether such a condition was a defect or want of repair in the street.

*C. U. Bell,* (*W. E. Rowell* with him,) for the defendant.

*C. A. De Courcy,* for the plaintiff.

MORTON, J. It has been held that a condition of mere slipperiness upon a well constructed sidewalk due to natural causes alone, and not to an accumulation of ice and snow, did not constitute a defect in the way; (*Stanton* v. *Springfield,* 12 Allen, 566; *Billings* v. *Worcester,* 102 Mass. 329;) but that a way would be defective if so constructed, or if its condition was such that there was in consequence thereof some special cause for the collection or formation of ice in a particular locality and the way was thereby rendered unsafe and dangerous, though the ice was smooth and slippery, and not uneven or accumulated in ridges. *Stanton* v. *Springfield,* 12 Allen, 566. *Pinkham* v. *Topsfield,* 104 Mass. 78. *Fitzgerald* v. *Woburn,* 109 Mass. 204, 205. *Spellman* v. *Chicopee,* 131 Mass. 443. *Adams* v. *Chicopee,* 147 Mass. 440. This was held when the liability of cities and towns for defective ways was more stringent than now. We think the same reasons which then led to the adoption of the rule hold good now. The present case is in some respects perhaps a close one, but we cannot say that it should not have been submitted to the jury, or that the instructions were erroneous.

The gutter extended across the sidewalk, and was about fourteen inches wide and from an inch to an inch and a half deep, and formed a part of the sidewalk.  It was competent for the jury to find that this constituted a defect in the way, and that its construction was such as to cause a special deposit of ice at that particular place.  *Marvin* v. *New Bedford*, 158 Mass. 464, and cases cited. *Fitzgerald* v. *Woburn*, 109 Mass. 204.  *Spellman* v. *Chicopee*, 131 Mass. 443.  The case stands differently from what it would if the water as it discharged from the conductor spread out over the sidewalk in a thin sheet and then froze.  That would be like *Billings* v. *Worcester*, 102 Mass. 329, where it appeared that the sidewalk was properly constructed unless the slope was too great, and it did not appear what that was.  This case resembles more nearly *Fitzgerald* v. *Woburn*, *ubi supra*.  But there was evidence which would have justified the jury in going even further. The exceptions expressly state that there was " evidence on which the jury might have found that ice had accumulated to the height of a foot or more (it does not appear how much more) at the bottom of the iron conductor and extending out in the stone gutter about half way across the sidewalk," losing in thickness as it receded from the conductor, and extending easterly about six feet by the side of the grating, thus forming a mass of ice about six feet square, and partly within and partly without the limits of the way.  There was also evidence on which the jury would have been justified in finding that the sidewalk had been in this condition for a number of days.  We cannot say that a mass of ice, such as upon the evidence the jury may have found existed, was not an obstruction to public travel, and did not render the way unsafe and defective.  *Fitzgerald* v. *Woburn*, 109 Mass. 204.  *Olson* v. *Worcester*, 142 Mass. 536.  *Blake* v. *Lowell*, 143 Mass. 296.  *Adams* v. *Chicopee*, 147 Mass. 440.  The defendant contended, and there was evidence on which the jury could have so found, that the ice was about an eighth of an inch thick, and extended from the stone gutter a little over six feet easterly by the side of the grating to a point opposite a window in the adjacent building, and was three feet or more wide at the east end and a little narrower where it touched the gutter, and was perfectly smooth and even, and that the plaintiff slipped and fell on the thin ice farthest from the gutter.  If this accurately

described the condition of the ice and the place where the plaintiff slipped and fell, then she was not entitled to recover. But the plaintiff offered evidence that she slipped and fell as she stepped on or into the stone gutter; it was for the jury to say where she slipped and fell. Their attention was plainly directed to this matter by the court. They were told that it was important for them to determine whether she slipped at the gutter as she stepped on it or into it, or near the window where the grating was, the idea conveyed being, we think, from the instructions, that if she slipped and fell on the smooth ice near the window she could not recover. The jury were also instructed, in substance, that if the water as it came out of the conductor accumulated in the stone gutter, and in consequence thereof caused a slippery condition at that particular place where it crossed the sidewalk, it was for them to say, taking into account all the circumstances of the case and the necessity of constructing buildings along the side of the way, whether the way was reasonably safe, and if it was not then it was out of repair and defective. We are of opinion that the attention of the jury was directed with sufficient explicitness to the essential features of the case, and that there was nothing in the rest of the instructions on this branch inconsistent with what was thus said.

The defendant contends further that the notice was defective, because it did not describe the place where it was contended at the trial that the plaintiff fell. The notice described the place as two feet east of the gutter. The defendant conceded that there was no intention to mislead. We should hesitate to say that a variance of two feet in describing the place of the accident would render the notice void. The object of a notice is to direct attention with substantial accuracy, not with unerring precision, to the place where an accident has happened. In the present case, although the notice described the place where the plaintiff fell as two feet east of the gutter, it went on to describe the cause of the injury as " an accumulation of ice due in part to a water conductor which was broken and discharged water upon the sidewalk, and in part to said stone drain which confined the water in such a way that it formed a defect in the sidewalk and caused an accumulation of ice thereon," thus directing attention espe-

cially to the stone drain or gutter.   The jury has found that the defendant was not misled in fact by the notice, and we do not see how it could have been.   The notice was not given till two weeks after the accident, but the examination, measurements, and photographs on which the plaintiff relied were made and taken the morning after it, and included the gutter.   All the witnesses testified to the condition of the gutter.   We see no error in the instructions given on the matter of notice, and think that those requested by the defendant were rightly refused.   If there was no intention on the part of the plaintiff to mislead, and if the defendant was not actually misled, it was immaterial if through error the plaintiff may have intended to describe a different spot from the exact one where she fell.   See *Spellman* v. *Chicopee,* 131 Mass. 443; *Canterbury* v. *Boston,* 141 Mass. 215; *Fortin* v. *Easthampton,* 142 Mass. 486;   *Gardner* v. *Weymouth,* 155 Mass. 595.                     *Exceptions overruled.*