## MARY CRONIN *vs.* CITY OF HOLYOKE.

Hampden.    September 25, 1894. — October 19, 1894.

Present: ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Defective Sidewalk — Instructions to Jury — Submission of Special Question to Jury.*

In an action against a city for personal injuries occasioned by slipping upon ice on a sidewalk, the plaintiff's evidence tended to show that the ice was rough, and the defendant's that it was smooth. Upon the evidence reported to this court, it appeared that unless the ice was rough the plaintiff could not recover in any event. The jury found for the defendant, thus negativing the view that the ice was rough. *Held*, that the plaintiff was not injured by a refusal to give certain instructions requested by her, founded on the assumption that the jury might find the ice to have been smooth, since in no case could she recover if the ice was smooth.

At the trial of an action against a city for personal injuries occasioned by falling upon ice on a sidewalk, the judge submitted to the jury the following question, " Was there an imperfect construction of the sidewalk ? " The jury, who returned a general verdict for the defendant, did not answer the question, and no answer was required by the judge or requested by either party. *Held*, that there was no error in the course of the judge in submitting the question to the jury ; and that it could not be seen that the plaintiff was harmed thereby.

TORT, for personal injuries occasioned to the plaintiff by an alleged defect in a highway called Sargeant Street, in the defendant city. At the trial in the Superior Court, before *Fessenden*, J., the jury returned a verdict for the defendant; and the plaintiff alleged exceptions, which appear in the opinion.

*C. T. Callahan*, for the plaintiff.

*W. Hamilton*, ( *W. H. Brooks* with him,) for the defendant.

ALLEN, J.    This case comes before us on exceptions to the omission of the presiding justice to give certain instructions requested by the plaintiff.

The plaintiff was injured by slipping upon ice on a sidewalk. The plaintiff's evidence all went to show that the ice was rough, uneven, and hubbly at the place of the accident. The jury, it would seem, negatived this view. The defendant's evidence went to show the following state of facts, viz.: that the sidewalk descended four feet in fifty in going to the east; that opposite to the place of the injury a building thirty-two feet wide had its front on the sidewalk; that westerly of the building

there was a vacant lot of land fronting upon and sloping towards the sidewalk, which land was covered with snow; that water from the melting snow flowed from the lot at the corner of the building upon the sidewalk, and afterwards froze there; that on the morning of the day of the accident there was a strip of thin slippery ice, about one eighth of an inch thick, which extended lengthwise down the inside (that is, the northerly side) of the sidewalk, from a point near the corner of the building to the intersection of the next street; that this strip of ice was about five or six inches in width at the westerly end, and gradually increased in width as it ran down the hill till it measured about eighteen inches in width at the easterly end; and that this strip of ice was formed by water from melting snow on the vacant lot, which trickled down the sidewalk and froze.

The plaintiff disputed these facts, and introduced evidence tending to show that the water would not naturally flow from the vacant lot to and upon the sidewalk. The plaintiff's purpose apparently was to negative the defendant's theory of a thin strip of ice, and to support her own theory of an accumulation of uneven, rough ice upon the sidewalk, which it was assumed, on all hands, might be found to constitute a defect. And the plaintiff admitted that the sidewalk was " a perfect sidewalk," which we suppose means perfect in its construction.

But notwithstanding this admission, the plaintiff presented her requests for certain instructions, which were founded on the assumption that the jury might accept the defendant's view of the sidewalk.* The judge, however, gave no instructions upon

---

* The instructions requested were as follows :

" 1. If the sidewalk was so constructed as to induce the formation of ice upon it as a result of water made by melting snow flowing upon it from an embankment running along the walk, and ice did form on said walk as a consequence of such construction at the place alleged, and the city, by the exercise of reasonable care and diligence, could have prevented the water from so flowing, such formation of ice would be a defect for which the city would be liable even if the ice so formed were smooth and slippery.

" 2. If the presence of snow upon the vacant lot west of Shea's building caused the flowing of water upon the sidewalk and the formation of ice thereon, and such causing was known to the defendant, or ought to have been known to it, and by the exercise of reasonable care and diligence could have been prevented, the defendant would be liable."

the subjects of the plaintiff's requests, and left it to the jury to determine whether there was a want of repair, either from an accumulation of rough, uneven ice or snow, or arising from the imperfect construction of the sidewalk; giving no explanation as to what would constitute imperfect construction.

We do not, however, think the plaintiff suffered from this omission, because upon the case as it stood there was no sufficient evidence that the sidewalk was defective or out of repair, unless by reason of an accumulation of rough ice upon it. There was no suggestion that the place was improper or dangerous for a sidewalk to be built. It was on one of the streets of the city, and, in the absence of evidence to the contrary, we must assume that it was proper, if not necessary, to have a sidewalk there. It is not suggested that it was not built at a proper height. The admission of the plaintiff that it was a perfect sidewalk precludes us from doubting that it was. In going to the east it descended four feet in fifty. This clearly is not a dangerous or an unusual slope. There was nothing, then, in its construction to induce the flow of water upon it from the vacant lot, except the fact that the lot stood higher and sloped towards the street. The place where the plaintiff received her injury was not opposite to the vacant lot, nor at the corner of the building; it was opposite to the building, and may have been, and probably was, twenty-five or thirty feet away from the place where the water came upon the sidewalk, since the plaintiff, in her notice to the city, describes the place as "just west of the conjunction of Sargeant Street and Commercial Street."

There is nothing set out in the bill of exceptions which shows that the jury could find a defect in the sidewalk at the place of the plaintiff's injury by reason of the existence of the smooth ice described by the defendant's witnesses; and if there was no other evidence than that which has been shown to us, the judge might well have instructed the jury that the plaintiff was not entitled to recover unless they should adopt her view that she fell by reason of an accumulation of rough ice. See *Stanton* v. *Springfield*, 12 Allen, 566; *Nason* v. *Boston*, 14 Allen, 508; *Luther* v. *Worcester*, 97 Mass. 268; *Billings* v. *Worcester*, 102 Mass. 329; *Pinkham* v. *Topsfield*, 104 Mass. 78; *Street* v. *Holyoke*, 105 Mass. 82; *Fitzgerald* v. *Woburn*, 109 Mass. 204;

*Spellman* v. *Chicopee*, 131 Mass. 443; *Adams* v. *Chicopee*, 147 Mass. 440; *Hughes* v. *Lawrence*, 160 Mass. 474.

The judge might, in his discretion, submit the special question to the jury, as he did.* But they did not answer it, and no answer was required by the court, or requested by either party; so the whole idea of submitting a special question went for nothing. We cannot see that the plaintiff was harmed by this course.                    *Exceptions overruled.*

---

* The question was as follows: "Was there an imperfect construction of the sidewalk?"