DEFECTIVE SIDEWALKS—FORMATION OF ICE—LIABILITY OF MUNI-
CIPALITY.

The duty of a municipality to keep sidewalks in a condition
reasonably safe for public travel cannot be extended so as to
render it liable for injuries received by reason of the forma-
tion upon a walk of a thin strip of ice, caused by the dis-
charge, at a point two feet away, of water conducted through
a pipe from a sag in an eaves trough.[1] MONTGOMERY and
MOORE, JJ., dissenting.

Error to Jackson; Peck, J. Submitted January 8,
1896. Decided May 26, 1896.

Case by Lavina Gavett against the city of Jackson for
personal injuries. From a judgment for defendant on
verdict directed by the court, plaintiff brings error.
Affirmed.

*Pringle & Hewett*, for appellant.

*William E. Ware*, City Attorney, for appellee.

MONTGOMERY, J. (*dissenting*). This action is brought
to recover for injuries received by plaintiff while traveling
on a sidewalk in Mill street, in the city of Jackson,
the cause of the injury being a formation of ice, consist-
ing of a ridge from 1½ to 2 inches thick in the center,
and sloping from the center either way, and in all cover-
ing about 3 feet in width. The evidence disclosed that
this ice was formed by the freezing of a discharge of
water carried by a conductor pipe of an adjoining build-
ing, and that this pipe had been in use for seven or eight

---

[1] The authorities as to the liability of a municipal corporation for
ice on streets or sidewalks are found in a note to *Hausmann* v.
*Madison*, (Wis.) 21 L. R. A. 263.

years before the accident, and that the common result was for ice to form at this point whenever freezing weather followed mild weather; that this particular ridge of ice had been there in its then condition for two or three days, and, as one witness stated it, perhaps a week, before plaintiff received her injuries. The circuit judge, being of the opinion that the case was ruled by *McKellar* v. *City of Detroit*, 57 Mich. 158, withdrew all questions from the jury, and directed a verdict for defendant.

The occasion of the fall in *McKellar* v. *City of Detroit* was a ridge of ice caused by the tramping of snow, and melting and freezing, until the surface became uneven; obviously, the result of climatic influence, combined with the ordinary and proper use of the street. *Rolf* v. *City of Greenville*, 102 Mich. 544, depended upon a state of facts precisely analogous to those in *McKellar's Case*. *Hutchinson* v. *City of Ypsilanti*, 103 Mich. 12, was held to be within the doctrine of *McKellar's Case*, on the ground that the use of the street to accumulate snow thrown from the walk or street-railway track was reasonable, and the city should not be liable because ice formed on the uneven parts of the snow thus found. In *Kannenberg* v. *City of Alpena*, 96 Mich. 53, it appears that the city had made provision for carrying off the water by gutters, and by supplying catch basins; that, on the occasion in question, the catch basin had become stopped up, so that the water was not carried off. As was stated, no fault was found with the catch basin's construction, and it was held that there was in that case no liability. It was said in that case:

"Some cases have been cited in support of plaintiff's claim, but they relate to instances where, by the neglect of the hydrants or water spouts, water was permitted to drop upon the walk, where it froze. These cases are clearly distinguishable from the case before us."

It will be seen that no case has been before this court involving the precise question presented. We are well

satisfied with the doctrine advanced by the court in the *McKellar Case*, and those which have followed it; and the doctrine that a failure to provide against a formation of ice in the usual way, as a result of freezing, cannot, in this climate, be deemed a want of due care or a defect in the street, is too fully settled to be open to question. But it does not follow from this that a walk cannot be constructed so as to make the accumulation of ice unnecessary at a particular point, and unnecessary and unnatural, in a sense that it may be treated as a defect in the way. Much less can it be said that a city may permit water to be carried onto the walk by artificial means, in such manner that the inevitable result is the formation of ridges of ice, and, without using any precaution to prevent this dangerous impediment to travel, shield itself under the claim that the climate is the real cause of the difficulty. *Todd* v. *City of Troy*, 61 N. Y. 506; *Pomfrey* v. *Village of Saratoga Springs*, 104 N. Y. 459; *Hall* v. *City of Lowell*, 10 Cush. 260; Elliott, Roads & S. 459; *Scoville* v. *Salt Lake City*, 11 Utah, 60. And see the true distinction noted in *Stanton* v. *City of Springfield*, 12 Allen, 566, and again in *Hughes* v. *City of Lawrence*, 160 Mass. 474; *Corbett* v. *City of Troy*, 53 Hun, 228. See, also, *Canfield* v. *Railway Co.*, 78 Mich. 356.

We think the plaintiff made a case entitling her to have the jury determine whether the walk was reasonably safe for public travel, and whether the defect had existed for such length of time that the city authorities, in the exercise of reasonable supervision, should have known of and remedied the defect, by removing the accumulation of ice; and, in the determining of this question, the jury had the right to take into consideration the fact, if proven, that the water spout in question had for years been the occasion of ice formations at this point, as this would have a direct bearing upon the degree of diligence required by the city in removing the ice accumulation in question.

The judgment should be reversed, and a |new trial ordered.

MOORE, J., concurred with MONTGOMERY, J.

GRANT, J.  I think that the instruction of the circuit judge was correct.  The sidewalk was about 10 feet wide, and in good repair.  The building, which stood on or near the line of the street, was provided with an eaves trough, which had sagged near the center, so that the accumulated water would flow over, to the annoyance of the tenants.  To remedy this, a pipe, two inches in diameter, had been put up, to take the water from the sag.  This came down to the ground, and discharged its water about 2 feet from the sidewalk, and part flowed over the walk, resulting in the thin strip of ice, 3 feet wide, and 1½ to 2 inches thick.  *Todd* v. *City of Troy*, 61 N. Y. 506, *Pomfrey* v. *Village of Saratoga Springs*, 104 N. Y. 459, and *Hall* v. *City of Lowell*, 10 Cush. 260, cited by my Brother MONTGOMERY, evidently make no distinction between accumulations of ice and snow caused by natural and by artificial means.  In *Pomfrey* v. *Village of Saratoga Springs* the water had fallen from the roof of a barn situated near the street, and the ice and snow had accumulated on the walk to the depth of 3 feet.

What are the artificial means, as distinguished from natural ones, for which municipalities must be held liable?  People have the right to erect buildings from which the water must flow to the ground, and, if it comes faster than the ground can absorb it, it must flow onto the sidewalks.  Is the city to be held responsible, under the prior decisions of this court, for this rightful and natural flow of water, when the weather has intervened and frozen it?  People have the right to conduct the water from the roofs of their buildings to the ground by means of gutters, eaves troughs, and conductors.  This water must seek the street gutters, to be carried away.  This is done in all villages and cities where direct communication is not

made from the conductor to the sewer. Why should the city be held liable for accumulations caused by the action of the weather in these cases, and not liable for accumulations, just as dangerous, resulting from other causes, such as snow from sidewalks and street-car tracks, which was the case in *Hutchinson* v. *City of Ypsilanti*, 103 Mich. 12, or ice formed in consequence of the stoppage of a catch basin, causing the water to flow over the sidewalk, which was the case in *Kannenberg* v. *City of Alpena*, 96 Mich. 53? Many, and probably most, houses, are built higher than the sidewalks, with sloping yards in front. Under the rule sought to be established in this case, municipalities would be liable for the natural flow of the water from such buildings over the yards to the sidewalks. Such is the doctrine in *Pomfrey* v. *Village of Saratoga Springs*. Such holding is not consistent with the former decisions of this court. The nonliability for the natural flowing and spreading of water, as it comes from conductors, is recognized in *Hughes* v. *City of Lawrence*, 160 Mass. 481. In that case a gutter had been constructed across the sidewalk. It was claimed that water had collected in this gutter, and frozen, to the height of a foot or more, and that upon this the plaintiff fell. It was claimed by the defendant that the water had spurted from holes in the conductor over the sidewalk, forming a thin coating of ice, upon which the plaintiff fell. It was held competent for the jury to find that the former constituted an obstruction, but that the latter did not.

I think that the logical conclusion from our former decisions is that the defendant is not liable.

Judgment affirmed.

LONG, C. J., concurred with GRANT, J.

HOOKER, J. I concur with my Brothers LONG and GRANT in the affirmance of the judgment in this cause. Unless we are to say that it is the duty of the owners

of all lots that are higher than the adjoining highways to prevent the flow of water therefrom, or promptly remove any ice that may form by reason of the escape of water from their buildings upon the adjoining highways, and, further, that the city must at its peril see that such duties are performed, we must hold that the plaintiff should not be permitted to recover in this cause.   If a liability exists, it is because of a defect in the highway; and, if ice frozen upon a sidewalk is a defect when it is caused by water flowing from a roof, why should it not be when it flows from a vacant lot, or when it falls upon the walk, or is caused by the melting of snow upon or adjoining such walk?   If the liability of a city for damages resulting from a failure to keep its highways in a reasonably safe condition for travel extends to cases where such condition is not ascribable to defects in the construction and maintenance of the way, or to the action of the officers of the city or their negligence in the performance of a duty, it may be contended that cities must cause the streets to be patroled, in search of bricks or coals that fall from wagons, for the treacherous banana peel, upon which the unwary are sure to slip, and for tacks or bits of glass or other rubbish, which puncture the tires of bicycles.   I think such are not defects in the highway.

The presence of the water upon the walk was due to no act of the city or its officers.   It is manifest that it must escape from the premises across the walk if it is to reach the gutter.   Were there no building there, and the lot of uniform grade, the whole surface of the walk might be expected to be covered with ice; while, if undulating so as to form a valley, the water might flow over the walk within limited bounds, no wider than in this case.   Shall we say that because the water falls upon a roof instead of the ground, or because it finds its way through a conductor instead of a valley to a given point, there is a liability upon the city?   Is it desirable to omit the eaves trough, and shed the water uniformly upon the walk, making it wet and icy throughout,

rather than at one point, where the presence of the conductor may indicate the possible presence of ice? Unless we are prepared to say that the city must see that water does not flow upon the sidewalk at all by so constructing its ways, walks, sewers, and other devices as to prevent it, or that it must remove all ice from walks seasonably, I do not see how we can hold the city liable in this case. There is not even the gutter across the walk (which walk the city had the responsibility of keeping in repair) that —in the case of *Hughes* v. *City of Lawrence*, 160 Mass. 481—the court said "it was competent for the jury to find * * * constituted a *defect in the way*, and that its construction was such as to cause a special deposit of ice at that particular place;" thus distinguishing between the gutter, which the city was responsible for, and the conductor, admittedly defective, with which, as in this case, it had nothing to do.

The trend of Michigan decisions has been against the theory that every obstruction in a highway is a defect for which the city is to be mulcted in damages by persons meeting with accidents by reason thereof. In *Agnew* v. *City of Corunna*, 55 Mich. 428, a bowlder four feet high, taken from the roadbed, and placed by the side of the road, was held not to be a defect in the way, which was said to be in good repair. *McKellar* v. *City of Detroit*, 57 Mich. 158, upon which case the learned circuit judge relied, emphasizes this rule in an ice case. The case differs from this chiefly as to the manner in which the water came upon the walk, being in that case caused by the melting of snow which fell there. The case of *Joslyn* v. *City of Detroit*, 74 Mich. 459, should not be overlooked. This was where a lot owner placed a pile of sand in the way, by consent of the city authorities, which was the cause of a buggy being overturned, to the injury of the occupant. A verdict directed for the defendant was reversed, Mr. Justice CAMPBELL dissenting. In *Hutchinson* v. *City of Ypsilanti*, 103 Mich. 12, Mr. Justice GRANT distinguished *Joslyn* v. *City of Detroit* and

*Hayes* v. *City of West Bay City*, 91 Mich. 418, showing that the city was an active agent in causing the obstruction.

I think the judgment of the circuit court should be affirmed.