McEVOY v. CITY OF SAULT STE. MARIE.

1. MUNICIPAL CORPORATIONS—DEFECTIVE HIGHWAYS—FAILURE TO REMOVE OBSTRUCTIONS—PERSONAL INJURIES—LIABILITY.

The liability imposed on municipalities by 1 Comp. Laws, § 3441, for bodily injuries sustained by reason of neglect to keep their highways "in reasonable repair, and in condition reasonably safe and fit for travel," extends to a failure to re-

move obstructions placed in the street by third persons without the consent of the municipality; the element of notice or knowledge being present as in other cases. So *held* where building stone were deposited in the paved part of a street by an abutting owner. *Joslyn* v. *City of Detroit,* 74 Mich. 458, followed. Grant, J., dissenting.

2. Same—Notice.
    Actual notice of an obstruction in a street to the city superintendent of streets is notice to the city.

3. Same—Contributory Negligence—Question for Jury.
    Plaintiff was injured by the collision of a cutter in which he was riding with certain building stone which had been left in the traveled part of the highway. It was after dark, and the stone were covered by snow. The driver had discontinued using that street some four months previously, by reason of the presence of the stones, but had since passed daily along the sidewalk. He testified, however, that he had not observed the stones, and supposed, on the occasion in question, that they had been removed. *Held,* that he was not guilty of contributory negligence as a matter of law.

4. Same—Presentation of Claim—Computation of Time.
    A charter provision requiring claims for injuries resulting from defective highways to be presented "within 60 days next after such injury" allows 60 days after the *day* of the injury. for such presentation.

5. Stare Decisis—Overruling Decisions.
    Before overruling a former decision deliberately made, the court should be convinced not merely that the case was wrongly decided, but that less injury will result from overruling than from following it.

6. Statutes—Re-enactment—Adoption of Settled Construction.
    *It seems* that, where a statute is re-enacted which has received a construction by the Supreme Court, such construction becomes a part of the new law.

Error to Chippewa; Steere, J. Submitted November 20, 1903. (Docket No. 144.) Decided March 23, 1904.

Case by Bartholomew McEvoy against the city of Sault Ste. Marie for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*John W. Shine,* for appellant.

*George B. Holden,* for appellee.

Carpenter, J. December 24, 1901, while plaintiff was driving on Elizabeth street, in said city, his cutter came in contact with certain stones therein, and plaintiff was thrown heavily to the ground and injured. These stones, amounting to two or three cords, were placed in the street about the middle of the preceding August by one Frank E. Swift, who was building a house at this point. During all this time they were left without a light or other guard to indicate their presence. 'The mayor of the city lived on an adjacent lot, and passed said stones daily. In the month of September the general superintendent of the streets of the city had observed the stones, and had directed the contractors to remove some obstructions on the sidewalk. An ordinance of the city gave the mayor or common council authority to permit the placing of building material in the street. There was no proof that express permission to place these stones where they were had ever been given under this ordinance.

At the time the plaintiff was injured, one William H. King, who was riding with him, was driving the horse. Said King was in the habit of driving on Elizabeth street when the stones were first placed there, and had ceased to drive there on that account. He had not driven there afterwards until the time of the injury. At that time he supposed the stones had all been removed. From the time he ceased driving until the time of the injury he had passed the place daily, walking on the sidewalk, but had not observed the stones.

Within 60 days after his injury, plaintiff served a notice upon the common council of said defendant, and on the 22d of February served a notice on defendant's comptroller. The trial court directed a verdict for defendant on the ground that it was not liable, under the statute, for failure to remove these stones. The principal question raised on this appeal relates to the correctness of this decision.

1. In considering this case, we are not embarrassed by the vexed question of constructive notice. There was actual notice of this obstruction to the superintendent of defendant's streets. This was notice to defendant. *Dundas* v. *City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457); *Moore* v. *Township of Kenockee*, 75 Mich. 332 (42 N. W. 944, 4 L. R. A. 555). We are confronted with the question, not of the duty of the municipality to discover obstructions placed in its streets by a wrong-doer, but of the duty of the municipality to remove obstructions to travel after knowledge of their existence.

It is clear that, under the principles of the common law, defendant is not liable for plaintiff's injuries. See *City of Detroit* v. *Blackeby*, 21 Mich. 84 (4 Am. Rep. 450). Is it liable under the statute? The first statute making municipalities liable for injuries to persons upon the highways was passed in 1879. See Pub. Acts 1879, Act No. 244. That statute has been superseded by another (see Act No. 264, Pub. Acts 1887), which governs this case. These two acts, viz., that of 1879 and that of 1887, so far as the language applicable to this case is concerned, are the same. If defendant is liable under the act of 1879, its liability under the act of 1887 is clear. I first propose, therefore, to consider the question of whether, under the act of 1879, a municipality is liable for such an injury as that received by plaintiff.

Section 1 of the act (see 1 How. Stat. § 1442) made municipalities liable for bodily injuries sustained "by reason of neglect to keep public highways * * * in good repair, and in a condition reasonably safe and fit for travel." Section 2 made municipalities liable for damages to property by reason of neglect "to keep in repair any public highway," and contained the provision that, "in all actions brought under this act, it must be shown that" the municipality "had reasonable time and opportunity, after such highways * * * became unsafe or unfit for travel, to put the same in the proper condition for use."

Section 4 made it the duty of municipalities "to keep in good repair, so that they shall be safe and convenient for public travel at all times, all public highways, streets, bridges, cross-walks, and culverts." The title of the act was "An act for the collection of damages sustained by reason of defective public highways, streets, bridges, cross-walks, and culverts."

This act was open to two constructions,—one, that it imposed upon municipalities an obligation to use diligence to keep their highways and streets in a condition reasonably safe and fit for public travel; and the other, that it imposed upon municipalities only the obligation to use due diligence to keep their highways and streets in good repair. Under the first construction, there would be an obligation on the part of a municipality to remove obstructions within a reasonable time after it had knowledge or notice of their existence. Under the second construction, there would be no such obligation. In the case of *Joslyn* v. *City of Detroit*, 74 Mich. 458 (42 N. W. 50), this court deliberately adopted the first construction. The facts in that case were very similar to those in the case at bar, and were these: On the evening of April 23, 1886, plaintiff was driving on Clifford street, in Detroit. Her carriage came in contact with a pile of sand, and was overthrown, and she was injured. This pile of sand was placed in the street to be used for building purposes. It had been there a month or more, during which time it had not been guarded, nor had signals of warning been placed upon it. There was no evidence, as was pointed out in the brief of defendant, that the defendant city permitted it to be placed in the street. The issue raised by these facts required the court to determine whether municipalities were responsible for negligent failure to remove obstructions placed in the streets by third persons, and this court deliberately determined that the statute created that obligation. Justice CAMPBELL, who took part in that decision, wrote a vigorous dissenting opinion. If we follow that decision, it is decisive of the question now under consideration, and com-

pels us to say that the learned trial judge erred in deny-
ing liability.  Various reasons are urged why we should
not follow that decision.

It is said that the decision was wrong.  If this is true,—
which I cannot admit,—it was certainly not an unreason-
able construction of the statute.  It did no more than
give effect to the language of the first section, which
gives a cause of action for bodily injuries resulting from
neglect to keep a street "in a condition reasonably safe
and fit for travel.".  I cannot agree to the proposition that
injuries resulting from obstructions which the municipality
negligently permitted to remain in the streets is not one of
the mischiefs intended to be remedied by this statute.  It
is true that in such a case the injured party has a doubtful
remedy against the person primarily responsible for the
obstruction.  But when we consider the difficulty often-
times of ascertaining who that person is, and his general
lack of financial means, as doubtless the legislature did,
this is a remedy of very doubtful value.  If the wrong-
doer, instead of putting the obstruction in the street, had
made an excavation therein, the liability of the munici-
pality, after knowledge or notice, is clear.  If the latter
instance is within the mischief of the statute, why is not
the former ?  The municipality is equally negligent in
both cases, and in each case the party primarily responsi-
ble is an independent wrong-doer.  Suppose the wrong-
doer, in making the excavation in the street, had heaped
the material up alongside.  In that case the municipality
would be responsible for permitting the excavation to re-
main, but would be under no legal obligation to remove
the obstruction.  If a pedestrian should encounter the ob-
struction and fall into the excavation, I do not know how,
under the opposing theory, the case would be determined.

Nor am I able to see that the construction of the statute
in the *Joslyn Case*, contended for in this opinion, leads to
injustice.  The decision does not require a municipality
to follow every person in its streets, and see that he does
not leave an obstruction therein.  It only requires it to

remove the obstructions of which it has, in the language of the statute (section 3442, 1 Comp. Laws), knowledge or notice.

The most that can be made of the objections against *Joslyn* v. *City of Detroit* is that the court there adopted the less reasonable of two opposing constructions of a statute. If this is true,—which, except for the purpose of this opinion, I should not admit,—it does not furnish a sufficient reason for overruling that case. Before this court overrules a decision deliberately made, it should be convinced not merely that the case was wrongly decided, but also that less injury will result from overruling than from following it. I can see how injury may result from overruling *Joslyn* v. *City of Detroit*. We make the law uncertain to individuals and to municipalities who for 15 years have relied upon that decision. Can we expect those who follow us to have more respect for this decision than we evinced for that? Will litigants and members of the bar have confidence that this court, as at present or as hereafter constituted, will feel itself bound by this decision? This condition of uncertainty is an evil which works serious injury. In his dissenting opinion in the *Joslyn Case*, Justice CAMPBELL said:

"It is hardly necessary to resort to further reasoning on the subject, unless we are prepared to hold that our own decisions do not bind us as precedents. If we do not follow them, it is of very little consequence what we decide."

I have pointed out some of the injuries which will result from overruling *Joslyn* v. *City of Detroit*. What good is there to offset this injury? At most, this: We place a more harmonious and more reasonable, but not a juster, construction on the statute. I think argument is unnecessary to prove that more injury will result from overruling than from following *Joslyn* v. *City of Detroit*.

It is said that *Joslyn* v. *City of Detroit* is inconsistent with former decisions of this court. *Agnew* v. *City of Corunna*, 55 Mich. 428 (21 N. W. 873, 54 Am. Rep. 383);

*McKellar* v. *City of Detroit*, 57 Mich. 158 (23 N. W. 621, 58 Am. Rep. 357); *McArthur* v. *City of Saginaw*, 58 Mich. 357 (25 N. W. 313, 55 Am. Rep. 687). In *McArthur* v. *City of Saginaw, supra*, Chief Justice MORSE wrote a separate concurring opinion, in which he foreshadowed the decision announced in *Joslyn* v. *City of Detroit*, and in which he undertook to reconcile views in harmony with those subsequently announced in *Joslyn* v. *City of Detroit* with the decision in that case, and with the decision in *Agnew* v. *City of Corunna*. It is a part of the duty which I undertake in this opinion to reconcile the decision in *McKellar* v. *City of Detroit* with the *Joslyn Case*.

If *Joslyn* v. *City of Detroit* is inconsistent with the former decisions, it is none the less binding upon us. Three of the four judges who decided *Agnew* v. *City of Corunna*, and all the judges who decided the other cases, participated in deciding *Joslyn* v. *City of Detroit*. Respect for these judges, then, who participated in these earlier decisions, should impel us not to follow, but to disregard, them.

It is said that *Joslyn* v. *City of Detroit* is inconsistent with later decisions of this court (*Hutchinson* v. *City of Ypsilanti*, 103 Mich. 12 [61 N. W. 279]; *Gavett* v. *City of Jackson*, 109 Mich. 408, 414 [67 N. W. 517, 32 L. R. A. 861]), in which it was held that, under the statute in question, the city was not responsible for accumulations of snow and ice. These cases follow the case of *McKellar* v. *City of Detroit*, 57 Mich. 158 (23 N. W. 621, 58 Am. Rep. 357), heretofore referred to. I cannot agree that *McKellar* v. *City of Detroit* is inconsistent with *Joslyn* v. *City of Detroit*. *McKellar* v. *City of Detroit* does not proceed upon the view that there is no obligation on the part of a municipality to remove obstructions of any kind. I quote from that case:

"The natural meaning of the act, both in the title and in the body, is to create liability only for having ways out of repair, and defective on that account. Several

authorities treat the class of obstructions in question as involving want of repair and defects. But in the absence of statutes which provide for them as such, it is not a natural construction, and the cases are more consistent which deal with these things as acts of negligence at common law. A great deal, however, may fairly depend on local usage in determining duties concerning highways in winter. Where it is customary to treat the removal of snow and ice as a regular part of highway management, the failure to look after it may be properly regarded as wrongful and negligent."

The court then proceeds, for two pages, to prove, not that there is no obligation on the part of a municipality to remove obstructions of any kind, but to prove that there is no such obligation to remove snow and ice. It is argued in the opinion that this obligation generally rests, not upon the municipalities, but upon the owners of the abutting property, and that:

"It would be a great hardship, and involve ruinous expense, if all of the multitudinous ways that are subject to be affected by winter storms are to be constantly watched and diligently kept in thoroughly good condition. * * * No amount of diligence can supply an adequate force and adequate means to detect the inevitable accumulations of snow trampled into hardness on every cross-walk or in every roadway."

And the opinion concludes:

"It is possible that some legal duty ought to exist for clearing off such ridges as they are raised by the feet of passengers; but to provide for it by means which will be reasonable, and not oppressive on the many towns and municipalities throughout the State, will be a task of some difficulty. We are satisfied no such liability has thus far been provided for."

In *Hutchinson* v. *City of Ypsilanti*, 103 Mich. 12 (61 N. W. 279), Chief Justice McGRATH wrote a concurring opinion, in which he favored the overruling of *Joslyn* v. *City of Detroit;* and it is a very significant circumstance that none of his associates signed it. They contented themselves with reaffirming the decision of *McKellar* v. *City of Detroit.*

I conclude, therefore, that the line of cases now under discussion, holding that a municipality is not responsible for failure to remove snow and ice, is not inconsistent with the decision in *Joslyn* v. *City of Detroit*. The obligation of a municipality to keep a street in a condition reasonably safe and fit for public travel does not require it to do what, in the language of this court, "no amount of diligence" can do.

I do not think we can sustain the decision of *Hayes* v. *City of West Bay City*, 91 Mich. 418 (51 N. W. 1067), except upon the principles of *Joslyn* v. *City of Detroit*. In that case, plaintiff was injured by colliding with a building being moved through the streets of defendant municipality. The building was being moved by a third person under a license from the municipality, which directed that it should be moved under the supervision of the city marshal. Defendant was held liable. I think the fact that the city gave the above license constitutes the sole distinction between the *Hayes Case* and the *Joslyn Case*. I think it clear, however, that this license did not make the city liable for plaintiff's injuries, according to common-law principles. See *Fisher* v. *Thirkell*, 21 Mich. 1 (4 Am. Rep. 422). Indeed, if there ever was any common-law liability in such cases, it was abrogated in 1887. See 1 Comp. Laws, § 3445. The liability of the city for injuries resulting from obstructions, whether created by or despite municipal license, depends, therefore, upon the statute. This was recognized in the *Hayes Case*. We quote from that opinion:

"It is contended by the city that the right of action relied upon against the defendants La France is based purely upon a common-law liability, while that against the city is purely statutory, and that a statutory action cannot be joined with one at common law in this manner. We do not consider this question important, as the case against the defendants La France was withdrawn by the court from the jury at the close of the plaintiff's evidence, and thereafter the plaintiff proceeded against the city alone. The declaration was sufficient as against the city

without counting upon the statute, as it contained all the necessary averments to bring the case within the statute."

There is nothing in the statute which enables us to say that a municipality is liable for obstructions which it permits to be placed in the street, and that it is not liable for other obstructions of which it had knowledge or notice. If it is liable for obstructions which it permits to be placed there, it is liable because it has knowledge or notice of such obstructions (see section 3442, 1 Comp. Laws); and we would read into the statute what the legislature never placed in it, if we discriminate between such obstructions and other obstructions of which it has knowledge or notice.

It is true that this court in *Hutchinson* v. *City of Ypsilanti*, and in *Monje* v. *City of Grand Rapids*, 122 Mich. 649 (81 N. W. 574), and Justice HOOKER in his concurring opinion in *Gavett* v. *City of Jackson*, indicated that the *Hayes Case* and the *Joslyn Case* were based upon the principle that the city was an active agent in causing the danger. This certainly was not true of the *Joslyn Case*. I do not think it was true of the *Hayes Case*. I do not think that the mere municipal permission to move a building through a street, under the supervision of the city marshal, makes the municipality an active agent in the resulting injury. Even if it does, its liability depends upon the statute, and there is no ground, as I have already pointed out, for distinguishing such cases from the case now before us.

I have already alluded to the circumstance that this case arose, not under the act of 1879, but under the act of 1887. The act of 1887 repealed the act of 1879, and practically re-enacted it. The main change was to extend the liability to injuries resulting from defective sidewalks, and to change the language respecting knowledge and notice to the municipality. When this legislation was enacted, *Joslyn* v. *City of Detroit*[1] had determined the construction of the act of 1879. If some other State had

[1] Decided April 19, 1889.

adopted this legislation, it would be held to have adopted it with that construction.   Is it not clear that this same reasoning compels us to say that our legislature, in enacting this legislation, adopted the construction placed upon it in *Joslyn* v. *City of Detroit* ?

I conclude, therefore, that it is our duty to recognize *Joslyn* v. *City of Detroit* as an authoritative construction of the statute creating municipal liability.

2. It is urged that the judgment of the lower court should be affirmed on the ground that Mr. King was guilty of contributory negligence, and that his negligence is to be imputed to the plaintiff.   I do not think, under the facts stated in the record, and heretofore set forth in this opinion, that we can say, as a matter of law, that Mr. King was guilty of contributory negligence.

3. It is urged, also, that the judgment should be affirmed on the ground that plaintiff did not serve notice of his injuries on defendant's comptroller within 60 days, and that his cause of action was therefore barred.   Section 18 of chapter 6, Act No. 468, of the Local Acts of 1901, required plaintiff, "within 60 days next after such injury, to present such claim to the comptroller of said city, in writing and under oath."   It is contended by the defendant that, in computing this 60 days, the day of plaintiff's injury is to be counted.   Under this construction, plaintiff did not present his claim to the comptroller until the 61st day after his injury.   We do not think this construction proper.   We think he had 60 days *after* the day of his injury (*Gorham* v. *Wing*, 10 Mich., at pages 495, 496; *Warren* v. *Slade*, 23 Mich. 1 [9 Am. Rep. 70]), and therefore the claim was presented within the statutory time.

I think, therefore, that the judgment of the lower court should be reversed, and a new trial granted.

MOORE, C. J., MONTGOMERY and HOOKER, JJ., concurred with CARPENTER, J.

GRANT, J. (*dissenting*).   Elizabeth street, of the defendant city, is about 700 feet in length, extending be-

tween Peck and Spruce streets, two of the principal thoroughfares of the city. It was paved to the width of 20 feet, with stone curbs on each side of the paving. It is a residence street. Early in August, 1901, one Swift commenced the erection of a dwelling on the west side of the street. Stone of various sizes were used in erecting the basement walls of the building, and during its erection were piled in the paved portion of the street on the west side. When the building was completed is not shown by the record. It appears that it was completed prior to the time of the accident, the 24th of December following. Some loose stones, estimated to be two or three cords, were left upon the street, extending to within about 4 feet of the center, and from 50 to 60 feet along it. The mayor of the city lived upon this street, on the lot next to the house that was being erected. Plaintiff gave evidence tending to show that the general superintendent of streets had observed the stone. Snow had fallen and covered them.

On the evening of December 24th, after the light of day had partially disappeared, one King invited plaintiff and another to ride with him in his cutter, drawn by one horse. One of the runners struck a stone which was covered by the snow, in consequence of which the cutter was finally overturned and plaintiff injured. Mr. King, the owner and driver of the cutter, frequently both drove and walked along this street. From the time the stone were placed there up to the night in question, he had avoided the street, when driving, on account of the obstructions. During that time he passed them daily, walking to and from his residence to his office. He testified that he supposed the stone had all been removed from the street. Neither the contractors nor the owner of the building had obtained permission from the common council of the defendant to place their building material upon this street during the erection of the building. The charter authorized the use of the streets for that purpose only by permission of the mayor or the common council, upon appli-

cation made.   Plaintiff seeks to recover under the statute
for negligence in failing to keep the street in reasonable
repair and in condition reasonably safe and fit for travel.

When the plaintiff rested, the court directed a verdict
for the defendant, stating his reasons therefor as follows:

"The actual meaning of the act, both in its title and in
the body of the act, is to create a liability only for the
street being out of repair, and defective on that account;
and it is not a natural construction of that statute to speak
of obstructions like building material left on the street as
involving a want of repair or a defect in the highway.
*   *   * It is not a defect in the highway, but an ob-
struction in the highway."

The main question in the case is, Does the statute, in
addition to imposing liability for defects in the streets and
highways, impose a liability for the wrongful acts of
others in placing obstructions upon streets and highways
otherwise in good condition, the municipality being in no
sense responsible for placing them there?   The claim of
the plaintiff is that, although the municipality has per-
formed its full statutory duty in making its streets and
highways reasonably safe and fit for public travel, yet it
is also liable for any obstructions wrongfully placed there
by others, whenever it can be shown that the proper offi-
cers of the city have actual notice or knowledge thereof,
or whenever they have remained there so long that con-
structive notice may be implied.

In construing the act, its title and provisions are im-
portant.   The title to the act (No. 264, Pub. Acts 1887) is
"An act to provide for the recovery of damages for in-
juries caused or sustained by reason of defective public
highways, streets, bridges, sidewalks, cross-walks, or
culverts."   Chapter 91, 1 Comp. Laws.   Section 1 makes
the municipality liable to any person for bodily injury
sustained "by reason of neglect to keep such public high-
ways," etc., "in reasonable repair, and in condition
reasonably safe and fit for travel."   Section 2 makes the
municipality liable for injury to any animal or other

property, caused " by reason of neglect  *  *  *  to keep in repair any public highway," etc.   Section 3 imposes the duty upon municipalities to keep their highways, etc., " in reasonable repair, so that they shall be reasonably safe and convenient for public travel;" and provides that " when the means now provided by law are not sufficient to enable any township," etc., " to keep its public highways," etc., " in good repair, such township," etc., " is hereby authorized to levy such additional sum " as may be necessary, " not exceeding five mills on the dollar."

" For the sure and true interpretation of all statutes, whether penal or beneficial, four things are to be considered: What was the common law before the act? What was the mischief against which the common law did not provide ?   What remedy the Parliament had provided to cure the defect.   And the true reason of the remedy."   1 Kent, Com. p. 464.

Under the decisions of this State, municipalities were not liable at the common law for failure to properly construct or properly repair public streets and highways. *City of Detroit* v. *Blackeby* (decided in 1870), 21 Mich. 84 (4 Am. Rep. 450).   Individuals and private corporations are liable at the common law for injuries resulting to travelers from their unlawful acts in obstructing highways. *Darmstaetter* v. *Moynahan*, 27 Mich. 188.   Municipalities were not liable at the common law for these unlawful acts of private parties.   Notice or knowledge that another has committed a wrong does not make the party having such notice or knowledge liable for such wrong.

At the common law, municipalities are liable, the same as private parties, for obstructing streets and highways, or in doing work thereon not connected with their construction and repair.   *City of Detroit* v. *Corey*, 9 Mich. 165 (80 Am. Dec. 78).   The city in that case was constructing a sewer, and while so doing left an excavation unguarded, into which the plaintiff fell and was injured. The basis of the holding was that the city was not en-

gaged in a work upon the streets in which the entire public were interested, but was engaged in a *quasi* private work, in which only a portion of the people of the city were interested.   It was held that in such case the common law imposed the same liability in the construction of the work as it did upon an individual or strictly private corporation. In matters of this kind "public corporations are as distinctly legal persons as private corporations." *Sheldon* v. *Village of Kalamazoo*, 24 Mich. 383, 385.

This court has also held in other cases that, where the obstruction in the street was placed there by the express authority or direction of the municipal authorities, the city was liable.   *Hayes* v. *City of West Bay City*, 91 Mich. 418 (51 N. W. 1067); *Finch* v. *Village of Bangor*, 133 Mich. 149 (94 N. W. 738).

In *McCool* v. *City of Grand Rapids*, 58 Mich. 41 (24 N. W. 631, 55 Am. Rep. 655), the judgment of the court below was sustained by a divided court.   The negligence alleged was the existence of cobble stones upon a street. We infer from the record that the stones were not placed there by private individuals, but were left there by the public authorities, and were to a large extent imbedded in the roadbed.

In *Agnew* v. *City of Corunna*, 55 Mich. 428 (21 N. W. 873, 54 Am. Rep. 383), it was held that the natural and correct construction of the statute was that the "remedy is confined to cases where the want of repair is the immediate cause of the injury, as where there are obstructions or defects in a roadway or bridge, where the vehicle in passing over it encounters the mischief complained of."

In *McKellar* v. *City of Detroit*, 57 Mich. 158 (23 N. W. 621, 58 Am. Rep. 357), it was said:

"The natural meaning of the act, both in the title and in the body, is to create liability only for having ways out of repair, and defective on that account."

In *McArthur* v. *City of Saginaw*, 58 Mich. 357 (25 N. W. 313, 55 Am. Rep. 687), the negligence charged was the

piling of lumber by a private individual in the street, against which plaintiff's horse, having taken fright, ran. The court said:

" If the city had put the lumber there and left it, some other considerations might be presented.   *   *   *   The whole tenor of the statute is confined to the duties of cities and towns to construct their roads, and repair them when out of order.   The duty is the same in regard to all of these corporations.   But it is manifest that their powers and means of preventing private parties from doing what may interfere with the safety or convenience of passers-by are not at all uniform or coextensive.   These private acts may consist of temporary, as well as permanent, nuisances, and may cause damage by fright as well as by physical violence, and neither cities nor towns could effectually prevent them in all cases, without ruinous expense and very large means.   But it is always possible, at moderate cost, to keep in repair such streets as are worked at all, and that work must be done by the municipality itself in most cases, and in all cases may be, if neglected by others.   As suggested in *Agnew* v. *City of Corunna*, it is constantly permitted to abutters on streets to occupy portions of the street for longer or shorter intervals with lumber and materials.   How far this may safely be done without injury to the traveling facilities of the public must be largely a matter of discretion with the city.   The unauthorized or excessive use of such privileges, when what is done does not create what is properly a defective way, is an abuse to be rectified under the police powers of the public, and does not belong to the making or repairing of ways.   There is no more legal necessity for holding cities liable for the failure to enforce their police laws in favor of travelers than in favor of many other citizens who suffer from nuisances or wrongs."

Upon the same principle, a municipality, in erecting a market building, is subject to the same degree of care as private individuals would be in its construction.   *Barron* v. *City of Detroit*, 94 Mich. 601 (54 N. W. 273, 19 L. R. A. 452, 34 Am. St. Rep. 366).

The first act, whose title and provisions upon this subject are the same as in the present act, was enacted in 1879, after the decision in *City of Detroit* v. *Blackeby*.   Under

the rule of construction as above stated by Mr. Kent, the mischief for which the common law provided no remedy was the nonliability of municipal corporations for injuries caused by defects in the construction of highways or in failure to repair them. A remedy did exist, as above shown, at the common law, for other wrongs committed upon the highways. The decisions of this court prior to the passage of the act clearly defined the acts for which municipalities were liable, and those for which they were not liable, upon the public highways. In this condition of the law the first act was passed. Its title spoke only of "defective highways," etc. Did the legislature mean that a highway is defective when some private individual had wrongfully placed stones, vehicles, or other obstructions upon the street, and left them there? What language is there in the title of this act to indicate the imposition of a liability for acts of private individuals in obstructing highways? It seems to me clear that such a liability as now contended for is not within the title of the act, and that the title contains no language from which such a purpose can be inferred. The only language in the body of the act which can be construed into imposing this liability is, "in condition reasonably safe and fit for travel." This language must be construed with reference to the title to the act, all other provisions of the act, and the previous condition of the law. Section 3 imposes only the duty to keep the highways, etc., "in reasonable repair, so that they shall be reasonably safe and convenient for public travel." Reading these two sections and the title together, I think it entirely clear that the legislature had in mind exclusively defects existing for want of repair. I think this language of section 1 refers to the condition of the roadbed, and cannot be held to mean that it is the duty of municipalities to exercise a constant watch and police of their highways, to see that private parties do not unlawfully obstruct the streets. The party injured has a remedy against the obstructor, and the intent on the part of the legislature to give him an additional remedy there-

for against the municipality should be very clear indeed.

The only case which can be held to establish this construction is *Joslyn* v. *City of Detroit*, 74 Mich. 458 (42 N. W. 50). We cited this case in *Hutchinson* v. *City of Ypsilanti*, 103 Mich. 12 (61 N. W. 279), saying that the pile of sand was left in the street by the express authority of the city. Chief Justice McGRATH, in a concurring opinion, held that the *Joslyn Case* was opposed to the early decisions of the court, and should be overruled. That the case is in direct conflict with the former decisions is apparent. See, also, *Gavett* v. *City of Jackson*, 109 Mich. 408, 414 (67 N. W. 517, 32 L. R. A. 861); *Monje* v. *City of Grand Rapids*, 122 Mich. 645 (81 N. W. 574). The only other cases where *Joslyn* v. *City of Detroit* has been cited by this court are *Malloy* v. *Township of Walker*, 77 Mich. 448 (43 N. W. 1012, 6 L. R. A. 695), where it was cited with other cases to support the proposition that it was the duty of a municipality, under certain circumstances, to erect barriers or railings in order to make the highway reasonably safe, and in *Finch* v. *Village of Bangor*, 133 Mich. 149 (94 N. W. 738), where the village had itself obstructed the street with planks. The *Joslyn Case* has never been cited with approval to sustain the proposition now contended for. On the contrary, this court, whenever it has been cited to support it, has distinguished it as above stated. It is now contended by the plaintiff's counsel that the record in *Joslyn* v. *City of Detroit* does not show express authority on the part of the city. If it does not, and the case be found to hold that the city is liable for wrongful obstructions placed upon the highways by private individuals, I think it should be overruled.

We have held in many cases that the statute does not apply to accumulations of ice and snow, although they render the highway unsafe and in a condition unfit for public travel. *Hutchinson* v. *City of Ypsilanti, supra.* These obstructions render the highway fully as unsafe as obstructions placed there by individuals, and in many

cases such obstructions could be removed, and the road rendered safe. I am unable to understand the logic by which the statute can be held not to apply to obstructions caused by the elements, but to apply to obstructions caused by the wrongful acts of others.

Counsel for plaintiff has cited several decisions from other States. I have examined them, and, in my judgment, they throw no light upon the question here. None of them involve the construction of a statute like ours, and most of them contain no reference whatever to any statute. I do not deem further comment upon them necessary.

Judgment should be affirmed.