MANUEL RESTO NEGRÓN, ETC., ET AL., Plaintiffs and Appellees, *v.* PUERTO RICO TELEPHONE COMPANY and THE COMMONWEALTH OF PUERTO RICO, Defendants and Appellant the latter; ANASTACIO ORTIZ, Third-Party Defendant and Appellee.

Nos. R-66-145–R-66-147.      Decided May 14, 1969.

306

*Ángel Manuel Ciordia* for plaintiffs-appellees. *Rivera Zayas, Rivera Cestero & Rúa* and *Adrián Mercado* for the P.R. Telephone Company. *J. B. Fernández Badillo, Solicitor General,* and *Lolita Miranda, Assistant Solicitor General,* for the Commonwealth of Puerto Rico. *Héctor Martínez Muñoz* for Anastacio Ortiz.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE DÁVILA delivered the opinion of the court.

On February 20, 1960 the minor Manuel Enrique Resto sustained an accident. The trial court found that:

"On February 20, 1960, Manuel Enrique Resto had been shopping with his parents at the store of Enrique Montes. His father Manuel Resto Negrón gave him two gallons of kerosene inside a sack to take home. Manuel Enrique Resto and a younger brother headed towards their home, along highway 149 from Villalba to Ciales, taking the left walk. In reaching km. 20

Hm. 5 where the aforesaid branch was [said branch had been cut on January 20, 1960, by independent contractor Anastacio Ortiz Torres, by virtue of a lopping contract with the P.R. Telephone Co. which in turn had obtained a permit from the Department of Public Works to cut the branches which could be in contact with its lines], Manuel Enrique Resto stopped to tamper with the sack, lowering it to the ground. By then he was standing at the walk very close to the branch.

"At that moment a public-service automobile which ran in the direction from Villalba to Ciales stopped at its right-hand side but over the pavement of the roadway, in opposite direction to where Manuel Enrique Resto was tampering with the sack. From the curve which is in the direction of Villalba, at a few meters from the place where the public carrier was parked, came another vehicle which intended to pass by the left side of the one which was parked. The left front tire of said vehicle stumbled against the end of the branch, of about one and a half feet, which was lying over the paved part of the highway. Said stumbling caused the branch to move and hit Manuel Enrique Resto a strong blow on the leg.

". . . . . . . .

"The blow received by Manuel Enrique Resto threw him out of the highway, by the hillside. He was taken out of that place by his father, Manuel Resto Negrón and others, . . . he was taken to the Municipal Hospital of Ciales.

"The blow received by Manuel Enrique Resto caused him a comminuted compound fracture of the lower third of the left tibia and fibula, with an external wound four inches long in the same zone of the fracture, with exposition of the bones and muscles, he also suffered a simple fracture of the upper third of the tibia and fibula of the same left leg.

". . . . . . . .

"From the Municipal Hospital, Manuel Enrique Resto was sent to the District Hospital of Arecibo.

". . . under general anesthesia, a thorough cleaning of the wound which had strange material, wood, dirt and grass was made; the fractures were reduced, he was immobilized with a plaster cast from the hip down to the side of the foot and he was hospitalized.

"He had the plaster cast which was put on him when he entered, until March 10, 1960, when it was replaced.

"   .     .     .     .     .     .     .

"Manuel Enrique Resto returned to his home on March 12, 1960 and was confined to bed. He had pains in the wound and he smelled bad at the place of the fracture. For those reasons he returned to the District Hospital on March 26, 1960.

". . . He was admitted again in the Hospital and since there was danger that the bone could become infected, he was administered antibiotics twice a day until April 5, 1960. Then he remained confined until April 20, 1960. During that time the wound was treated with germicidal soap through an opening which was made in the plaster cast.

"On April 20, 1960 he was discharged once more in order to receive ambulatory treatment. . . .

". . . he returned home on April 20, 1960 and was confined to bed, going to the Hospital for the ambulatory treatment. The wound smelled bad again and he was hospitalized once more on June 9, 1960.

"During this third confinement he was administered antibiotics until July 28, 1960 but he remained in the hospital until August 12, 1960.

"From August 12, 1960 to November 28, 1961, when he was definitively discharged, he received ambulatory treatment, including physiotherapy.

"On January 31, 1964, Manuel Enrique Resto had a shortening of two and a half (2½) inches on the left leg, it showed the cicatrized wound of four (4) inches long by three (3) inches wide, with depression in the lower third of the left leg; he had a partial atrophy of the left lower extremity in its entire extension, when compared said leg with the other it showed the following differences: at 7 and 21 inches there was a one inch difference in the circumference, and at 14 and 28 inches there was a difference of one and a half (1½) inches, he suffered an osteoarthritis of the ankle related to the fracture which causes him permanent pain for which he needs analgesics, besides, the shortening of the left leg causes a deviation in the spinal column, from the thorax down to the hip, which causes him pain in the spinal column."

The minor's parents filed complaint·in their own right and in representation of the minor against the Puerto Rico Telephone Co. and the Commonwealth of Puerto Rico. The Commonwealth filed a cross-claim against the Puerto Rico Telephone Co. and the latter in turn filed third-party complaint against Anastacio Ortiz Torres (the independent contractor who had cut the branches). The Superior Court, Arecibo Part, Civil Section, concluded as a matter of law: "The accident involved in this case which occurred on February 20, 1960, as a result of which plaintiffs sustained damages, was due to the negligent action of the employees of Anastacio Ortiz in cutting, throwing and leaving the branch over the highway. . . . For the occurrence of the accident, there concurred the negligent omission of the foreman ·of the highway in failing to remove or causing to be removed from the aforesaid place the branch or stick, which remained in said position from the time it was cut in the period between Three King's Day and January 20, 1960 until the day of the accident, over thirty days, since using ordinary care he could have had knowledge of the dangerous condition created by the branch or stick for those using the highway." The court also concluded that: "Anastacio Ortiz Torres breached the contract which he had with Puerto Rico Telephone Co. . . . since he did not remove the branch or stick from the highway, assuming, for such nonperformance, all liability derived from said negligent act."

"It is also concluded that in view of the conditions stipulated in permit No.· 9.1-908-779 which the Bureau of Operations of the Department of Public Works of the Commonwealth of Puerto Rico granted to the Puerto Rico Telephone Co. in order to perform the lopping . . . the latter is liable to the Commonwealth of Puerto Rico for the amount it may be ordered to pay, since the damages caused to plaintiffs is the result of . . . the execution of the lopping . . . work conditionally authorized.

"Anastacio Ortiz Torres—as independent contractor—is liable for damages caused to plaintiffs for the negligent act of leaving the branch or stick in the aforesaid manner; the Commonwealth of Puerto Rico is liable for the foreman's negligence in allowing said branch or stick to remain on the highway for so long disturbing the free use of the same; Puerto Rico Telephone Co. is liable to the Commonwealth for the amount it may be ordered to pay according to the conditions of the permit granted to it and, by reason of the lopping contract between Anastacio Ortiz Torres and Puerto Rico Telephone Co., said contractor, in turn, will be liable to the company for what the latter shall have to pay for failing to perform its obligation to '. . . remove the product of the lopping. . . .' "

The trial court granted the complaint ordering Anastacio Ortiz Torres and the Commonwealth—up to $15,000 the latter—to pay jointly and severally the amount of $25,000, for damages sustained by the minor; they were also ordered to pay jointly and severally, the spouses, Manuel Resto Negrón and María Ricarda Hernández the amount of $5,000.

The court granted also the cross-claim, ordering the Puerto Rico Telephone Co. to pay to the Commonwealth of Puerto Rico the amounts which the latter may pay by reason of this judgment; likewise Anastacio Ortiz Torres was ordered to pay to the Puerto Rico Telephone Co. the amounts which the latter may pay by reason of this judgment. The third-party defendant and the Commonwealth were ordered to pay costs, the first was also ordered to pay $2,000 for attorney's fees.

The Commonwealth, the Puerto Rico Telephone Co. and the third-party defendant appeal from said judgment. The Commonwealth alleges that the trial court erred in determining that it was negligent. The Telephone Company assigns two errors: error in granting the cross-claim and error in fixing damages at the amount of $30,000. The third-party defendant assigns the commission of six errors: error in con-

cluding that the damages were the result of the combined negligence of the third-party defendant and of the Commonwealth; error in failing to conclude that the damages were the proximate and only result of a third person driving negligently a motor vehicle; error in fixing the damages at $30,000; error in ordering the third-party defendant to pay damages to original plaintiffs notwithstanding the fact that the latter did not claim anything directly from him, depriving him from raising against them, among others, the defense of prescription; error in ordering him to pay plaintiffs' attorney's fees; error in granting the third-party complaint.

■ 1.—In the first place we will analyze the Commonwealth's liability on this set of facts. We have that § 403 of the Political Code (3 L.P.R.A. § 421) establishes the obligation of the state to keep the highways in good condition. Said obligation is nondelegable and the fact of having contracted the performance of the work with a third person does not relieve it of its liability.[1] Section 404 of the aforesaid Code (3 L.P.R.A. § 422) establishes the extent of civil liability of the state in these cases. It provides:

"The Commonwealth of Puerto Rico shall be liable for injuries to persons or property occurring through a defect, or want of repair, or of sufficient protection, in or upon a Commonwealth highway in charge of the Department of Public Works, except where it shall be proven that such defects were caused by violence of the elements and that there had not been ample time in which to repair them."

■ The function of the state previously discussed being nondelegable, the "Lopping permit" granted to the Telephone Company is irrelevant in the determination of its liability. Although it is true that the aforesaid section does not make the state the absolute guarantor of the security of persons using our highways, on the other hand we do not find under the facts of this case that the accident was caused by

---

[1] *Morales* v. *Castro*, 85 P.R.R. 275 (1962).

violence of the elements or that there had not been ample time to remove the branch in question. On the contrary, the evidence showed that said branch was lopped or cut about January 20, 1960, remaining there until February 20 (thirty days more or less), date on which the accident occurred, without it being removed by the foreman of Public Works of that section, or by any of the roadmen in his brigade. According to the testimony of Jaime Mayol the branch in question was lopped after Three King's Day, being left on the walk, coming out about one and a half feet obstructing the highway. He also testified that every day he used to see the foreman, who lived and had his business at about an hectometer from his, going by the place where the branch was.

The foreman of the Department of Public Works of that section testified that he used to go by the place of the accident two or four times a day although he denied having seen any branch obstructing the highway, however he testified that in coming near the place the day of the accident, the police showed him a branch which was on the walk.

From the foregoing it is inferred that ever since the branch was lopped until the moment of the accident there was reasonable and sufficient time (about 30 days) for the Commonwealth to remove the branch by means of its foreman or members of his brigade.

The court did not err, then, in holding the Commonwealth liable for the negligent omission of its foreman, who allowed the existence of said obstacle on the highway for a period of about thirty days. In similar situations, the state has been held liable in other jurisdictions. *Battistoni* v. *State*, 149 N.Y.S.2d 614 (1956); *Pardy* v. *State*, 210 N.Y.S.2d 248 (1960); *Jones* v. *State*, 227 N.Y.S.2d 297 (1962); *Miami Shores Village* v. *Lingler*, 157 So.2d 716 (1963); *McEvoy* v. *City of Sault Ste. Marie*, 98 N.W. 1006 (1904); *Doherty* v. *Romano*, 135 Atl. 62 (1926).

2.—Now we turn to analyze the determination of liability of the Puerto Rico Telephone Co. made by the trial court.

As we said previously the Telephone Company merely assigns the commission of two errors, these being: the granting of the cross-claim, brought by the Commonwealth and the fixing of the amount for damages caused to plaintiffs. Despite the fact that the judge did not make express determination granting the complaint against the Puerto Rico Telephone Co. it is evident that it was so determined by him. It is the unavoidable consequence of having granted the third-party complaint and the cross-claim.

On November 12, 1959 the Secretary of Public Works of the Commonwealth, through the Director of the Bureau of Operations, Manuel Martorell, granted the Telephone Company a permit for the lopping of trees. This permit provided in its clause seven that the Telephone Company would be the only one liable for the damage which might be caused to life or to particular property by the performance of the work. We consider that this was not the exclusive source in this permit of the Telephone Company's liability. We understand that clause nine made said lopping untransferable and not subject to subcontracting. It provided:

"9. This permit is personal and untransferable and the grantee cannot transfer it to any other person without the previous consent of the Secretary of Public Works."

There was no proof of such consent. Nondelegable and untransferable rights and obligations were created by means of a contract. The Telephone Company subcontracted the lopping in violation of the express terms of the permit. On the other hand clause six of the permit was also violated, this violation constituting the proximate cause of the damages. To wit:

"6. The products of the lopping shall be removed from the highway and from its walks and ditches the same day on which the work is executed."

Although it is true that the third-party defendant was an independent contractor, the Telephone Company's liability

arises from the terms accepted and stipulated in the lopping permit. They were not performed. The trial court did not err, then, in holding the Puerto Rico Telephone Co. liable, in granting the cross-claim and in ordering the Telephone Company to pay the Commonwealth the amounts which the latter had to pay to plaintiff.

In connection with the second error after considering the circumstances of the case, the nature of the injuries received, the percent of incapacity of the injured extremity, and the percent of the resulting general incapacity, the injured's age, what he would earn in the light of life expectancy, and the sufferings and mental anguish of the minor and his parents, we do not believe that the compensation of $30,000 is excessive.

3.—Let us now consider the errors assigned by the third-party defendant, the contractor who performed the lopping. These come down to the following: error in determining that the damages were the result of the combined negligence of the third-party defendant and the Commonwealth, and in turn failing to conclude that it was the sole negligence of a third person not involved in the suit; error in holding the third-party defendant directly liable to original plaintiff, and error in granting the third-party complaint and the payment of attorney's fees.

The evidence presented showed fully that the negligent act of the third-party defendant, in cutting and leaving the branch obstructing the highway, as well as the omission of the Commonwealth by its foreman, in failing to remove it from the highway, concurred in causing the damage.

Although it is true that a third person, who ran over the branch with his vehicle, intervened in the accident, this was an intervening cause which could be reasonably foreseen, in view of the place and the position in which the branch was left. The accident was an incident or normal effect of the risk created. Its existence was allowed for about 30 days. The

chain of causality was not broken. *Ginés* v. *Aqueduct and Sewer Authority,* 86 P.R.R. 490 (1962); *Cruz Costales* v. *Commonwealth,* 89 P.R.R. 102 (1963). The contention of the third-party defendant is to the effect that the driver hit the minor directly with his vehicle and that afterwards he collided with a tree which was near the place of the accident. That said driver was coming fast and besides he did not have a driver's license and that he had a plaster cast on his right leg. However, the detective who investigated the accident rebutted that theory with his testimony. He testified that he had examined and inspected the vehicle and that the latter showed no damage on its front part. He also testified that he had found a long branch, which has some blood spots on its thinnest part and some automobile tire tracks on its thick part.

■ The trial court did not err in granting the third-party complaint brought by the Telephone Company. From the contract subscribed to by the third-party defendant and the Telephone Company on October 26, 1959, the first was bound "to remove the product of the lopping from the place in which the work is being performed and shall deposit it in the city dump." He did not do it. In said contract the third-party defendant "is liable for any damage which may be caused to property or to persons during the performance of the work." To those effects he was bound to obtain a policy with coverages for:

"Public Liability                $50,000.00
 Accidental death                 25,000.00
 Group insurance                 250,000.00"

He did not entirely execute or perform the contractual terms being thus liable to the Telephone Company for everything which the latter shall have to pay to the Commonwealth and to plaintiffs plus $2,000 for attorney's fees and costs.

The judgment will be affirmed.