NAVARRE *v.* CITY OF BENTON HARBOR.

MUNICIPAL CORPORATIONS—ICY SIDEWALKS—NEGLIGENCE—QUESTION FOR JURY.

Where a depression existed in a sidewalk constructed up a steep grade and alongside an embankment, permitting surface water, and liquids escaping from a garbage tank maintained on private premises at the top of the embankment, to flow across the walk to the gutter, some 18 inches below, which condition had existed for a long space of time, the question of the city's liability for injuries sustained by a pedestrian in falling upon ice forming on the walk at such point should have been submitted to the jury.

Error to Berrien; Coolidge, J. Submitted January 10, 1901. Decided May 21, 1901.

Case by Edith Navarre against the city of Benton Harbor for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Gore & Harvey,* for appellant.

*H. S. Gray (G. M. Valentine,* of counsel), for appellee.

MONTGOMERY, C. J. This action was brought to recover damages for personal injuries sustained by plaintiff from a fall upon a sidewalk on High street, in the city of Benton Harbor, on January 23, 1899. High street is a principal street of the city, and much traveled. At the point where the injury occurred, the street ascends a hill at a high grade. The sidewalk was four feet in width, and at the place of the injury was eighteen inches above the gutter. From the inner side of the walk an embankment arose to a height of something like four feet. This embankment was faced with artificial stone. It appeared

that, abutting this embankment, the walk had a slope towards the street of about four inches in four feet. It also appeared that there was a drop in the walk at that particular point,—a place where the walk had settled down,—making it slope off towards the gutter, and, as may be inferred, arresting the flow of water lengthwise of the walk. There was testimony tending to show that the result of this was to accumulate ice at the place of this drop, and that it would form there, and had been accustomed to form there for a considerable period before the injury. It was also in evidence that adjacent to this point on the walk was a building, occupied by tenants, and that a large garbage tank was located upon these premises near the embankment, and that the liquid from this garbage tank found its way onto this walk through a leakage, and that this had continued from 1896 down to the time of the injury to the plaintiff, in 1899; that the flowage from the garbage tank followed the depression in the sidewalk; that the result was that this depression and drop in the walk formed a course for the flowage of the liquids from the garbage tank and other waters that flowed from the adjoining premises, and in cold weather it became frozen, and formed a sheet of ice from two to three feet in width and from a half inch to an inch and a half in thickness. The walk was not safeguarded by rails, nor were there any cleats of any kind. There was sufficient evidence to justify the submission to the jury of the question of whether the city had notice of these defects. The injury to the plaintiff occurred in the early morning, before daylight, while going from her rooms to her work; and, while some question is made in the briefs of counsel as to whether the injury is shown to have occurred at the point in question, we think this was a question for the jury. The circuit judge was of the opinion that the case should be ruled by *Gavett* v. *City of Jackson*, 109 Mich. 408 (67 N. W. 517, 32 L. R. A. 861), and directed a verdict for the defendant.

We think the case should have been left to the jury.

There was here a concurrence of a peculiar formation of the walk, which arrested the flow of water down the hill, and caused it to flow across the walk at this point, forming an open gutter, with the improper flow of wastage from the garbage tank, resulting in a dangerous and icy place. The case is distinguished from *Gavett* v. *City of Jackson* in these respects: In that case a majority of the court was of the opinion that there was no improper flowage of water across the sidewalk in question, which was itself in good repair, and not so laid as to cause water to accumulate and form ice. That cannot be said of the present case. The jury would be justified in inferring that the depressed condition of this walk was such as to induce the formation of ice in unusual quantities, and it certainly would be justified in finding that an improper flowage of the wastage from the garbage tank was permitted by the city, and continued for a long period. *Canfield* v. *Railway Co.*, 78 Mich. 356 (44 N. W. 385). The case is a close one on its facts, but closely resembles *Hughes* v. *City of Lawrence*, 160 Mass. 474 (36 N. E. 485), and is in principle like *Fitzgerald* v. *Inhabitants of Woburn*, 109 Mass. 204. See, also, *Hampson* v. *Taylor*, 15 R. I. 83 (8 Atl. 331, 23 Atl. 732); 1 Wood, Nuis. § 120.

The judgment will be reversed, and a new trial ordered.

MOORE and LONG, JJ., concurred with MONTGOMERY, C. J. HOOKER and GRANT, JJ., concurred in the result.