PAPPAS *v.* CITY OF BAY CITY

Opinion of the Court

1. Trial—Directed Verdict—Evidence.

> The testimony must be taken in a light most favorable to the plaintiff in considering a motion by defendant for a directed verdict.

2. Municipal Corporations—Negligence—Failure to Maintain Sidewalk—Liability to Injured Person—Statute.

> Persons sustaining bodily injury on a public street or sidewalk by reason of failure of a city to keep such public streets and sidewalks in reasonable repair may recover damages in a civil action against the city (CLS 1961, § 242.1).

3. Municipal Corporations—Negligence—Defective Sidewalk—Icy Sidewalk—Directed Verdict.

> Directed verdict for defendant city in an action by plaintiff to recover damages for injuries suffered when she slipped and fell on an icy spot on a sidewalk maintained by defendant was reversible error because, while the mere presence of ice and snow will not allow recovery, plaintiff had a right to go to the jury on the question of whether the defendant city discharged its duty to keep the sidewalk in reasonable repair where there was evidence that a depression in the sidewalk allowed water to accumulate and that the freezing of the water resulted in the icy surface.

---

References for Points in Headnotes

[1] 53 Am Jur, Trial §§ 332, 336, 390.
[2] 39 Am Jur 2d, Highways, Streets and Bridges §§ 340, 342.
[3] 53 Am Jur, Trial §§ 362–366.
   39 Am Jur 2d, Highways, Streets and Bridges §§ 342, 347.
[4] 53 Am Jur, Trial §§ 357–361.
   39 Am Jur 2d, Highways, Streets and Bridges §§ 342, 347.

4. Municipal Corporation—Negligence—Defective Sidewalk—
Icy Sidewalk—Directed Verdict.
  *Directed verdict for defendant city in an action by plaintiff to
  recover damages for injuries sustained when plaintiff fell on
  an icy spot in a sidewalk maintained by defendant was proper
  because a defect is not a proximate cause of injuries simply
  because it causes the accumulation of ice or snow where it
  is not alleged to have caused the injury in any other way.*

Appeal from Bay, Leon R. Dardas, J. Submitted Division 3 November 15, 1968, at Grand Rapids. (Docket No. 3,816.) Decided June 25, 1969. Leave to appeal denied August 27, 1969. See 382 Mich 779.

Complaint by Frances Pappas against the City of Bay City for damages resulting from injuries sustained as a result of a defective sidewalk. Defendant's motion for directed verdict granted. Plaintiff appeals. Reversed and remanded.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiff.

*Egloff, Mainolfi, Taylor, McGraw & Collison,* for defendant.

BEFORE: Holbrook, P. J., and T. G. Kavanagh* and McIntyre,** JJ.

McIntyre, J.  Plaintiff brings this action against the city of Bay City for injuries suffered after slip-

---

* Thomas Giles Kavanagh, Justice of the Supreme Court, assigned to sit on the Court of Appeals from February 27, 1969, "until the work assigned has been completed" pursuant to Const 1963, art 6, § 4, and CLS 1961, § 600.225, as amended by PA 1966, No 10 (Stat Ann 1969 Cum Supp § 27A.225).
** Circuit Judge, sitting on the Court of Appeals by assignment.

ping and falling on a public sidewalk. At the close of proofs, the defendant city moved for a directed verdict which was granted and the plaintiff appeals.

In granting this motion for a directed verdict the trial judge predicated his decision on *Hopson* v. *City of Detroit* (1926), 235 Mich 248 (48 ALR 1150) and the annotation at 80 ALR 1170.

It goes without saying that in the determination of a motion of this nature the testimony must be taken in a light most favorable to the plaintiff. With this rule in mind, we conclude that between 1950 and the date of the accident, December 20, 1963, no repairs were made to the sidewalk where the plaintiff fell. However, the sidewalk was repaired in March, 1964. Where a sidewalk joined with a curb at a street intersection, and the accident in which the plaintiff was injured did occur while stepping over a curb and onto a sidewalk at a street intersection, it was the standard of the city to repair the sidewalk when it had become depressed 2–3/8 inches below the adjacent curb. The reason for this standard by the city was that water would collect behind the curb if the sidewalk sloped down toward it. A neighbor of the plaintiff and her mother had noted that at the point where the plaintiff fell the sidewalk was depressed for a period of at least 10 months before the accident to the point where water would gather in the recess between the sidewalk and the curb and the difference in elevation between the sidewalk and the curb was such that the neighbor had to lift the wheels of her baby stroller over the curb to avoid catching them in the recess. Testimony was given by an investigator that he measured the sidewalk on the corner where the plaintiff fell and found that it was depressed 2–3/8 inches on one side and 1–3/4 inches on the other side below the level of the curb. Plaintiff testified that in crossing the intersection, she stepped

over the curb onto what she thought was a snowy surface and fell. After the fall it was discovered that there was ice under the snow upon which the plaintiff had stepped and she and her daughter concluded that the ice had caused the fall.

. At the time of the alleged injury the applicable statute provided:

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this state, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, crosswalks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled, and to any person suffering damages by reason of such injury, just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction." CLS 1961, § 242.1; Stat Ann 1958 Rev § 9.591).

Despite the many authorities cited in briefs, the appeal turns upon the analysis of four cases which have received the attention of the Supreme Court of the State of Michigan and which do not appear at first glance to be entirely consonant in establishing a precedential doctrine. These cases are: *Navarre* v. *City of Benton Harbor* (1901), 126 Mich 618; *Hopson* v. *City of Detroit* (1926), 235 Mich 248 (48 ALR 1150); *Rex* v. *Village of Lochmoor* (1934), 268 Mich 159; *Johnson* v. *City of Pontiac* (1936), 276 Mich 103. In *Navarre, supra,* there was a settling of a walk which permitted it to trap a flow of water from both natural sources and from an adjacent garbage tank maintained for the benefit of tenants of a private

building and the Court reversed a directed verdict for the defendant, stating:

"There was here a concurrence of a peculiar formation of the walk, which arrested the flow of water down the hill, and caused it to flow across the walk at this point, forming an open gutter, with the improper flow of wastage from the garbage tank, resulting in a dangerous and icy place. The case is distinguished from *Gavett* v. *City of Jackson* [(1896), 109 Mich 408] in these respects: In that case a majority of the Court was of the opinion that there was no improper flowage of water across the sidewalk in question, which was itself in good repair, and not so laid as to cause water to accumulate and form ice. That cannot be said of the present case. The jury would be justified in inferring that the depressed condition of this walk was such as to induce the formation of ice in unusual quantities, and it certainly would be justified in finding that an improper flowage of the wastage from the garbage tank was permitted by the city, and continued for a long period."

In *Hopson, supra,* plaintiff was walking on a cement sidewalk in the city of Detroit upon which there was a depression which had settled and the cement had disintegrated making the walk lower in the center. Water from natural causes accumulated in the depression and there was ice at the bottom and a thin layer of water on the top. When plaintiff reached the depression a branch of an overhanging tree grazed her face, she ducked, slipped and fell causing the injury complained of. Plaintiff had testified that she knew of the depression, that it was about four inches deep and had existed for two years at least, that rain water settled in the depression and ice formed there in the winter. There was testimony that although the depression existed, the pavement was not broken, and the Court held there was no culpable defect in the walk under the statute relative to

the duty of the defendant city to keep the walk in repair and reasonably safe for public travel. In reversing verdict for plaintiff the Court stated, p 252:

"The ice filled the depression, except a thin layer of water at the top, leaving no hole or trap into which plaintiff could step or catch her foot. Under the evidence and holding of this court, the verdict should have been directed for defendant at the close of plaintiff's proofs. Plaintiff made no case."

Our Court relied upon *Newton* v. *City of Worcester* (1899), 174 Mass 181 (54 NE 521), which enunciated a doctrine that where ice and snow is the sole proximate cause of the accident there shall be no liability unless there is another defect to which, as a proximate cause, the accident is in part attributable. This other defect, however, would not be held to be a proximate cause within the meaning of this rule simply because it causes the accumulation of the ice or snow. In the mind of this Court it is extremely difficult to reconcile *Hopson* with *Navarre,* more particularly since the Supreme Court in *Hopson* made no mention of the earlier *Navarre* case and certainly did not expressly overrule it.

*Rex* v. *Village of Lochmoor, supra,* seems to reestablish the old doctrine in a case where a boy 9 years old suffered death by drowning when he slipped on wet clay accumulating in a rough and broken public sidewalk, obscuring the edge of the public walk, and was precipitated into a river. The Court affirmed judgment for the plaintiff administrator. Without making reference to *Hopson, supra,* the Supreme Court in 1934 stated:

"It is true that a village is not an insurer of its sidewalks but it must maintain them in a reasonably safe condition for travel. CL 1929, § 4223. In cases where reasonable and prudent men may fairly dis-

agree upon how the duty shall be performed, the question is for the jury. With a slippery sidewalk sloping downwardly to the low ground and towards a precipitous drop to water and no guard rail to protect a pedestrian, a jury reasonably could find negligence. *Navarre* v. *City of Benton Harbor,* 126 Mich 618."

It is difficult to believe that the Supreme Court in *Rex* had not considered *Hopson,* particularly when the *Rex* decision was concurred in by Justice WIEST who had written the *Hopson* opinion.

The case of *Johnson* v. *City of Pontiac* (1936), 276 Mich 103, is not in point. In that case the jury found for the plaintiff and defendant moved for a judgment notwithstanding the verdict which was granted. Plaintiff appealed and the judgment was affirmed. The Court conceded that it was the duty of the defendant city to keep its sidewalks in repair and the sidewalk was in fact defective. The Court stated, p 105:

"Plaintiff may, therefore, recover *if she is free from contributory negligence* and is entitled in this appeal to have the evidence reviewed in a light most favorable to her claim." (Emphasis supplied.)

The Court later stated, p 107:

"The negligence of defendant city is apparent, but plaintiff's contributory negligence precludes possibility of recovery. She had knowledge of the defect, could see it at the time, had its condition in her mind and her attention was not distracted by any other cause. The situation is further distinguishable from many of those in the authorities cited by plaintiff in that the accident happened in broad daylight."

The Court then stated that the trial judge was correct in holding that the plaintiff was guilty of contributory negligence as a matter of law.

In the instant case, there was no evidence that the plaintiff knew of the sidewalk defect, knew of the existence of the ice under the snow, or had available to her any means to avoid the ice hazard created by the defect in the sidewalk which was obscured from her vision. There could therefore be no finding that the plaintiff was guilty of contributory negligence as a matter of law.

In a summary analysis, this Court believes that the Supreme Court of Michigan in *Hopson, supra,* believed that there was no actual defect in the sidewalk, and held the way it did because it wished to establish a doctrine that the mere presence of ice and snow will not allow recovery. If this view is taken, then all four cases upon which this appeal turns may be reconciled. It is the holding of this Court that the plaintiff in the case at bar had the right to go to the jury on the question whether the defendant city discharged its duty to keep the sidewalk in reasonable repair under the statute quoted above, and whether the disrepair, if it existed, caused the accumulation of ice and was this in fact the proximate cause of the injury to the plaintiff.

Comment should be made on Judge HOLBROOK's opinion in *Ingram* v. *City of Saginaw* (1966), 3 Mich App 371, since the defendant city in its brief believes that that case is analogous to the case at bar. We do not find it so. Judge HOLBROOK held simply that there was no causal connection between plaintiff's fall and the sidewalk defect because the part of the hole into which she stepped was not more than 2 inches in depth. The so-called 2-inch rule, as most recently endorsed by the Supreme Court of this state in *Berry* v. *City of Detroit* (1955), 341 Mich 702, and *Harris* v. *City of Detroit* (1962), 367 Mich 526, and exhaustively examined by Judge FITZGERALD in *Ingram* v. *City of Saginaw* (1965), 1 Mich App 36, has

no application to the case at bar. Mrs. Pappas did not claim that her injury stemmed from stepping into a deep depression causing her to turn her ankle, but rather that a depression 2–3/8 inches deep at one side, at least, allowed an unnatural accumulation of ice which was the proximate cause of her fall and injury. The question of proximate cause cannot arise in a case under the 2-inch rule because a fiat has been established that a depression less than 2 inches does not constitute a violation of a city's duty under the statute. The question of proximate cause does arise here, however, and plaintiff should have been allowed to go to the jury on the issue. As Judge FITZGERALD said in *Tucker* v. *Gillette* (1967), 6 Mich App 210, 216:

"The jury is the only institution known to our law capable of resolving this question."

Reversed and remanded for a new trial. No costs, a public question being involved.

T. G. KAVANAGH, J., concurred.

HOLBROOK, P. J. (*dissenting*). On December 20, 1963, plaintiff slipped and fell as she was walking along a public sidewalk in the city of Bay City. She brought this action against the city to recover damages for injuries sustained in her fall. Plaintiff testified that the accident occurred at the corner of Washington and 10th streets. Her daughter, who was with her at the time of the accident, testified that the two of them were walking south on Washington and crossed 10th and as plaintiff stepped up onto the southwest curb she slipped and fell. After the fall they noticed that there was ice under the snow onto which plaintiff had stepped.

The director of community development for the city, who was formerly the head of the public works department, testified that between 1950 and the date of the accident no repairs were made to the sidewalk where plaintiff fell. That sidewalk was repaired, however, in March, 1964. He further testified that neither he nor anyone at his direction ever made a measurement of the amount of the deflection between the curb and the sidewalk where plaintiff fell. He did state, however, that in a case where the curb was 2-3/8 inches higher than the adjacent sidewalk he would order it to be repaired. One of the reasons for the repair would be that water would collect behind the curb if the sidewalk sloped down toward it.

One of plaintiff's neighbors who had moved into the neighborhood about 10 months before the accident testified that she had many occasions to walk, pushing her son in a stroller, on the sidewalk where plaintiff fell. She stated that the sidewalk was in the same condition all the time she lived in the neighborhood. At the corner of 10th and Washington there was a recess in the sidewalk so that the wheels of her stroller would catch on the curb and she would have to lift the stroller up over the curb. When it rained, water would gather in the recess. This witness' testimony as to the condition of the sidewalk was corroborated by her mother.

An investigator employed by plaintiff's attorney's law firm testified that he measured the sidewalk on the corner where plaintiff fell. He measured the recess between the sidewalk and the top edge of the curb—on one side it was 2-3/8 inches and on the other 1-3/4 inches.

At the close of the proofs, defendant's motion for a directed verdict, of no cause of action, was granted and plaintiff appeals.

*Did the trial court commit error in granting defendant's motion for a directed verdict of no cause of action against plaintiff?*

In granting defendant's motion for a directed verdict the trial court stated:

"Nowhere was there any testimony about any tripping, any stumbling, any sliding into a depression, just slipping on a slippery spot. There was no indication of any hole in which she [plaintiff] slipped or depression into which she slipped or any protrusion over which she stumbled. It is true that the testimony showed that and the exhibits did show it was somewhere in the area of 2–3/8ths inches deflection between the top of the curb and the sidewalk. The proofs also showed by Mrs. Pappas' testimony and that of her daughter that this was completely covered over with ice and snow."

In *Hopson* v. *City of Detroit* (1926), 235 Mich 248 (48 ALR 1150), Mr. Justice WIEST stated in a similar factual case, pp 249, 250, 252, 253:

"Plaintiff testified that the walk had sunk in the center, and the cement was broken and had disintegrated; that the hole was about four inches deep and had existed for two years at least, and she knew that rainwater settled in the depression and ice formed there in the winter; that she never measured the depth of the depression and did not know exactly the depth thereof, but it might have been two inches deep, and that it was more than one inch deep. A witness for plaintiff thought the depression was three or four inches deep, because she had stepped in the depression and the water went over her rubbers and she judged 'a rubber is about three or four inches high,' but the depression might have been less than three or four inches deep, and might have been two inches deep, but was more than an inch and a half deep. * * *

"In *Newton* v. *City of Worcester* (1899), 174 Mass 181 (54 NE 521), the court pointed out the reason why the plaintiff in the case at bar may not maintain this suit. It was there said:

" 'We think the proper and only reasonable interpretation of the statute is, that wherever ice or snow is the sole proximate cause of the accident, there shall be no liability, but where at the time of the accident there is any other defect to which, as a proximate cause, the accident is in part attributable, there may be a liability notwithstanding the fact that it also may be attributable in part to ice or snow. *This other defect, however, is not a proximate cause within the meaning of this rule, simply because it causes the accumulation of the ice or snow.* In considering whether, "at the time of the accident, the way is otherwise reasonably safe and convenient," the attention is to be directed to the actual physical condition of the way for the purpose of ascertaining whether there is at that time any other danger to the steps of the traveler than that arising from the presence of ice or snow; if there be no other danger, then for the time being the way is "otherwise reasonably safe and convenient." '

"The ice filled the depression, except a thin layer of water at the top, leaving no hole or trap into which plaintiff could step or catch her foot. Under the evidence and holdings of this court, the verdict should have been directed for defendant at the close of plaintiff's proofs. Plaintiff made no case." (Emphasis supplied.)

The case of *Navarre* v. *City of Benton Harbor* (1901), 126 Mich 618, is not applicable because the facts are not analogous, *i.e.,* in that case there was a defect other than the natural accumulation of ice and snow which was a proximate cause of the accident. Likewise, the case of *Rex* v. *Village of Lochmoor* (1934), 268 Mich 159, is not applicable because the facts are not analogous, *i.e.,* the village failed

to maintain a sidewalk in a reasonably safe condition for public travel and to provide guard rails at the approach to a bridge; the sidewalk was slippery by reason of the accumulation of wet clay and dirt and the sidewalk sloped downward to low ground and toward a precipitous drop to the water. This condition continued for more than 30 days prior to the injury.

After a review of the entire record, it is my conclusion that the trial court herein properly granted defendant's motion for a directed verdict of no cause of action against plaintiff.

I would therefore affirm with costs to defendant-appellee.